## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| WESTFIELD INSURANCE COMPANY, | ) | |
| | ) | |
|     **Plaintiff,** | ) | **Case No.** |
| | ) | |
| **v.** | ) | |
| | ) | |
| NORRIS BROTHERS EXCAVATING, LLC, | ) | |
| JACOB W. NORRIS, and JUSTIN L. NORRIS, | ) | |
|     **Defendants.** | ) | |

## COMPLAINT FOR INDEMNITY AND EQUITABLE RELIEF

Plaintiff Westfield Insurance Company ("Westfield"), by and through the undersigned counsel, alleges the following for its Complaint for Indemnity and Equitable Relief against Defendant, Norris Brothers Excavating, LLC (the "Principal"), Jacob W. Norris, and Justin L. Norris (Jacob and Justin, collectively the "Principal's Members") (the Principal's Members collectively with the Principal, the "Defendants").

### I.    PARTIES

1.    Westfield is an Ohio corporation with its principal place of business in the State of Ohio, and Westfield is registered and/or authorized to transact business in the State of Tennessee. Westfield's principal place of business is located at Westfield's corporate headquarters in Westfield Center, Ohio, which is the location from which Westfield's high level officers direct, control, and coordinate Westfield's activities. Thus, Westfield is a citizen of the State of Ohio for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

2.    Upon information and belief, the Principal is a Tennessee limited liability company with its principal place of business in the State of Tennessee located at 1007 Rodgers Rd.,

Crossville, Tennessee 38572.  The Principal's Members, Jacob W. Norris and Justin L. Norris, are citizens of the State of Tennessee.  Accordingly, the Principal is a citizen of the State of Tennessee for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).  Upon information and belief, the Principal may be served with process via its Managing Members, Jacob W. Norris and/or Justin L. Norris at 1007 Rodgers Rd., Crossville, Tennessee 38572.

3.     Jacob W. Norris is a citizen of the State of Tennessee and may be served with process at his residence at 413 Rebecca Dr., Crossville, Tennessee 38555.

4.      Justin L. Norris is a citizen of the State of Tennessee and may be served with process at his residence at 77 Lantana Firetower Road, Crossville, Tennessee 38572.

## II.     JURISDICTION AND VENUE

5.     This Honorable Court possesses original jurisdiction over this Complaint pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs, and the matter is controversy is between citizens of different states.

6.     This Honorable Court possesses the power to declare the respective rights and other legal relations of Westfield and the Defendants as requested herein pursuant to 28 U.S.C. § 2201(a).

7.     Venue is proper in the United States District Court for the Eastern District of Tennessee, Northeastern Division, pursuant to 28 U.S.C. § 123 and 28 U.S.C. § 1391(a), because each of the Defendants resides in the Eastern District, Northeastern Division (Cumberland County).

## III.   FACTUAL ALLEGATIONS

### The Indemnity Agreement

8.   As a condition of Westfield's issuance of surety bonds on behalf of the Principal, the Principal, by and through Jacob W. Norris and Justin L. Norris, executed an Agreement of Indemnity in favor of Westfield (the "Indemnity Agreement"), a copy of which is attached hereto as **Exhibit 1**.

9.   With respect to the Principal's obligation to exonerate/indemnify and collateralize Westfield in relation to its potential liability under any surety bond Westfield issued on behalf of the Principal, Paragraph SECOND of the Indemnity Agreement states:

> The Indemnitors shall exonerate and indemnify the Surety from and against any and all liability for losses and/or expenses of whatsoever kind (including, but not limited to, interest, court costs, and counsel fees) and against any and all such losses and/or expenses which the Surety may sustain: (1) by reason of having executed or procured the execution of the Bonds; (2) by reason of the failure of the Indemnitors to perform or comply with the covenants and conditions of this Agreement; or (3) in enforcing any of the covenants and conditions of this Agreement. Whenever liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor, the Surety may demand, and the Indemnitors shall deposit with the Surety, cash or other collateral to secure the obligations of this Agreement, in kind and amount satisfactory to the Surety in its sole discretion. In the event of any payment by the Surety, the Indemnitors further agree that, in any accounting between the Surety and the Indemnitors, the Surety shall be entitled to charge for any disbursements made by it regarding the matters herein contemplated under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety. The Surety shall have every right and remedy which a personal surety without compensation would having, including the right to secure its discharge on any Bond.

10.   With respect to the trust fund nature of monies due to and to become due under contracts covered by the Bonds, Paragraph FOURTH states:

> It is expressly understood and declared that all monies due and to become due under any contract or contracts covered by the Bonds are deemed to be trust funds,

whether in the possession of the Indemnitors or otherwise for the benefit of and for payment of all obligations incurred in the performance of the contract and for labor, materials, and services furnished in connection with any such contract or contracts for which the Surety would be liable under any Bond, which trust also inures to the benefit of the Surety for any liability or loss it may have or sustain under any Bond, and this Agreement and declaration shall also constitute notice of such trust.

11.     With respect to Westfield's rights of access to the Principal's books and records,

Paragraph ELEVENTH states:

> At any time, and until such time as the liability of the Surety under any and all the Bonds is terminated, the Surety shall have the right to reasonable access to the books, records, and accounts of the Indemnitors; and any bank depository, materialman, supply house, or other person, firm, or corporation when requested by the surety, under contracts being performed by the Contractor, the condition of the performance of such contracts and payments of accounts. If requested by the Surety, the Contractor shall promptly confirm the Surety's rights to any entity or other person referenced above.

12.     With respect to Westfield's right to adjust, settle, or compromise any claim against

the Bond, Paragraph FIFTEENTH of the Indemnity Agreement states:

> The Surety shall have the right to adjust, settle or compromise any claim, demand, suit, or judgment related in any way to the Bond or contracts referenced in the Bond; whether arising on behalf of itself or in the name of any Contractor or other Indemnitor hereunder, and any such adjustment, settlement or compromise entered into by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety from the Indemnitors hereunder by reason of such adjustment, settlement or compromise.

13.     As a clarification that the Indemnity Agreement should be broadly construed in

Westfield's favor, Paragraph SIXTEENTH states, "The Indemnitors agree that their liability shall

be construed as broadly as the liability of the Surety, regardless of whether such liability is incurred

as a result of claims presented in contract, tort, equity, or otherwise."

### Westfield's Bonds and Losses/Exposures Thereunder

14.     In reliance upon the Principal's execution of the Indemnity Agreement in

Westfield's favor and in reliance upon Westfield's rights under the Indemnity Agreement,

Westfield issued a number of surety bonds on behalf of the Principal including, but not limited to, the following:

| Bond | Penal Sum | Obligee | Project |
|---|---|---|---|
| Performance Bond 4786637 | $2,943,497.65 | Sanitation District No. 1 | Richwood Gravity Sewer |
| Payment Bond 4786637 | $2,943,497.65 | Sanitation District No. 1 | Richwood Gravity Sewer |
| Performance Bond 4786629 | $878,325.30 | Morristown Utility Commission | New Spring Creek Force Main |
| Payment Bond 4786629 | $878,325.30 | Morristown Utility Commission | New Spring Creek Force Main |
| Performance Bond 4786646 | $411,616.00 | Town of Jacksboro | Dog Creek Trunkline Rehabilitation |
| Payment Bond 4786646 | $411,616.00 | Town of Jacksboro | Dog Creek Trunkline Rehabilitation |
| Payment Bond 8167643 | $3,524,062.00 | Hardin County Water District No. 2 | River Sewer Infrastructure |
| Performance Bond 8167643 | $3,524,062.00 | Hardin County Water District No. 2 | River Sewer Infrastructure |
| Payment Bond 4381343 | $1,115,387.00 | City of Crossville | 15-01 Water System Improvement |
| Performance Bond 4381343 | $1,115,387.00 | City of Crossville | 15-01 Water System Improvement |
| Payment Bond 4786644 | $2,967,855.00 | City of Paris | Sewer System Rehab Phase 1 |
| Performance Bond 4786644 | $2,967,855.00 | City of Paris | Sewer System Rehab Phase 1 |

The surety bonds identified in the table above (collectively, the "Principal's Bonds") are collectively attached hereto as **Exhibit 2**. For ease of reference, the underlying contracts for which the Principal entered into that are covered by the Principal's Bonds will be referred to as "Bonded Contracts" and the underlying projects collectively as "Bonded Projects".

15.    To date, Westfield has already paid the following losses, liabilities, costs, expenses, etc. arising out of and/or in connection with the Principal's Bonds:

| Claimant | Amount Paid | Bond |
|---|---|---|
| Cavco | $32,489.00 | Payment Bond 4786637 |
| Arts Rentals | $89,764.05 | Payment Bond 4786637 |
| **Total** | **$122,253.05** | |

16. In addition to the payments Westfield has already made on the Principal's Bonds, the following liability has been asserted against Westfield arising out of and/or in connection with the Principal's Bond:

| Claimant | Claim Amount | Bond |
|---|---|---|
| Hilltop Stone, LLC | $44,169.21 | Payment Bond 4786637 |
| Riegler Blacktop | $5,177.91 | Payment Bond 4786637 |
| A&A Safety Inc. | $4,750.00 | Payment Bond 4786637 |
| Spectra-Tech LLC | $11,700.00 | Payment Bond 4786637 |
| Boone | $10,847.00 | Payment Bond 4786637 |
| Southern Pipe & Supply Co. Inc. | $33,880.54 | Payment Bond 4786637 |
| Greater Cincinnati Blacktop | $80,600.00 | Payment Bond 4786637 |
| Vulcan Materials Co & Subsidiaries | $11,836.72 | Payment Bond 4786629 |
| United Rentals (North America) Inc. | $97,080.02 | Payment Bond 4786629 |
| Town of Jacksboro | Unknown | Performance Bond 4786646 |
| Sanitation District No. 1 | Unknown | Performance Bond 4786637 |
| City of Crossville | Unknown | Performance Bond 4381343 |

17. In addition, Westfield has incurred fees of attorneys and consultants arising out of or in connection with the Principal's Bonds in an amounts to be proven in this action, which currently exceed $10,345.50, and Westfield continues to incur fees of attorneys and consultants arising out of or in connection with the Principal's Bonds.

18. Westfield also continues to face exposure to the obligees under the Principal's Bonds and/or and, based upon the information it has received, Westfield expects to receive additional claims from the Principal's subcontractors/suppliers under the Principal's Bonds.

### Principal's Failure to Comply with the Indemnity Agreement

19. Despite Westfield's prior demands, the Principal has failed to indemnify, exonerate, and collateralize Westfield as required by the Indemnity Agreement.

20.     For example, by letter dated July 16, 2018, a copy of which is attached hereto as **Exhibit 3** and as more fully discussed therein, Westfield demanded that the Principal, among other things (a) indemnify Westfield for all losses paid by Westfield, claims against the Principal's Bonds, and expenses incurred by Westfield; (b) deposit funds and/or other collateral security that Westfield deems adequate equaling $700,000.00 relative to Westfield's estimated exposure; and (c) allow Westfield access to the Principal's books and records. However, the Principal did not indemnify Westfield, did not deposit collateral with Westfield in response to Westfield's demand, and did not allow Westfield access to the Principal's books and records.

21.     By letter dated September 10, 2018, a copy of which is attached hereto as **Exhibit 4** and as more fully discussed therein, Westfield, among other things, (a) outlined a number of defaults on the part of the Principal under the Indemnity Agreement including the Principal's failure to indemnify, collateralize, and allow Westfield reasonable access to its books and records; (b) advised the Principal that it was currently in breach of the Indemnity Agreement; (c) advised the Principal that Westfield would continue utilizing counsel to take action through litigation by Westfield to enforce its rights under the Indemnity Agreement and under law; and (d) advised the Principal of Westfield's expectations that the Principal continue to faithfully prosecute the Bonded Contracts during the pendency of any dispute or litigation with Westfield. To date, the Principal has failed to deposit any collateral and/or indemnify/exonerate any of Westfield's fees and expenses.

## Jacob Norris and Justin Norris's Actions

22.     By virtue of Paragraph FOURTH of the Indemnity Agreement, all monies due or to become due under the Bonded Contracts were impressed with a trust under Tennessee law (express, constructive, and/or resulting) in favor of and for the benefit of Westfield and the

Principal's subcontractors/suppliers on the Bonded Projects for the sole and special purpose of paying the Principal's obligations under the Bonded Contracts and for labor, materials, and serviced furnished in connection with the Bonded Contracts.

23. Moreover, by virtue of the Indemnity Agreement, the Principal held all monies due or to become due under the Bonded Contracts, to the Principal under the Bonded Contracts in trust under Tennessee law (express, constructive, and/or resulting) in favor of and for the benefit of Westfield for the special and exclusive purpose of paying the Principal's subcontractors/suppliers on the Bonded Projects from those proceeds (which would in turn satisfy the condition of the Principal's Bonds).

24. By virtue of their execution of the Indemnity Agreement on behalf of the Principal, the Principal's Members had actual notice of the trust that was imposed upon the proceeds of the Bonded Contracts and the special and exclusive purpose of the proceeds of the Bonded Contracts.

25. Upon information and belief, the Principal's Members accepted, directed the Principal to improperly use, or otherwise used proceeds of the Bonded Projects for purposes other than the Principal's payments to subcontractors/suppliers for work they performed on the Bonded Projects and/or to satisfy the conditions of the Principal's Bonds with actual knowledge that the Principal held those funds for the special and exclusive purpose of paying the Principal's subcontractors/suppliers out of those proceeds for the work they performed on the Bonded Projects.

## IV. CLAIMS FOR RELIEF

### COUNT I – Breach of the Indemnity Agreement

26. Westfield hereby restates the allegations contained in the foregoing paragraphs of this Complaint for Indemnity and Equitable Relief as if fully set forth herein.

27.     Under Paragraph SECOND of the Indemnity Agreement, as more fully set forth therein, the Principal is obligated to exonerate and indemnify Westfield from and against any and all liability for losses and/or expenses of whatsoever kind (including, but not limited to, interest, court costs, and counsel fees) and from and against any and all such losses and/or expenses which Westfield may sustain (a) by reason of having executed the Bond, (b) by reason of the failure of the Indemnitors to perform or comply with the covenants and conditions of the Indemnity Agreement, or (c) in enforcing any of the covenants and conditions of the Indemnity Agreement.

28.     To date, Westfield has incurred losses and expenses in excess of $132,000 as a result of (a) having executed the Principal's Bonds, (b) the Principal's failure to perform and comply with the covenants and conditions of the Indemnity Agreement, and/or (c) having to enforce the covenants and conditions of the Indemnity Agreement.

29.     Westfield continues to face exposure to further liability for losses and expenses by reason of (a) having executed the Principal's Bonds, (b) the Principal's failure to perform and comply with the covenants and conditions of the Indemnity Agreement, and/or (c) having to enforce the covenants and conditions of the Indemnity Agreement.

30.      The Principal has materially breached Paragraph SECOND of the Indemnity Agreement by failing and/or refusing to exonerate and indemnify Westfield from and against any and all liability for losses and/or expenses of whatsoever kind (including, but not limited to, interest court costs, and counsel fees) and from and against any and all such losses and/or expenses Westfield may sustain (a) by reason of having executed the Principal's Bonds, (b) by reason of the failure of the Indemnitors to perform or comply with the covenants and conditions of the Indemnity Agreement, or (c) in enforcing any of the covenants and conditions of the Indemnity Agreement.

31. Westfield has been damaged by the Indemnitors' material breach of Paragraph SECOND of the Indemnity Agreement in an amount in excess of $132,000.

32. Therefore, Westfield is entitled to the entry of judgment against the Principal in an amount sufficient to fully exonerate and indemnify Westfield from and against any and all liability for losses and/or expenses of whatsoever kind (including, but not limited to, interest, court costs, and counsel fees) and from and against any and all such losses and/or expenses which Westfield may sustain (a) by reason of having executed the Principal's Bonds, (b) by reason of the failure of the Principal to perform or comply with the covenants and conditions of the Indemnity Agreement, or (c) in enforcing any of the covenants and conditions of the Indemnity Agreement, which amount currently exceeds $132,000 and will be proven at trial.

## COUNT II – Specific Performance of the Indemnity Agreement (Deposit of Collateral)

33. Westfield hereby restates the allegations contained in the foregoing paragraphs of this Complaint for Indemnity and Equitable Relief as if fully set forth herein.

34. Under Paragraph SECOND of the Indemnity Agreement, whenever liability exists or is asserted against Westfield, whether or not Westfield has made any payment therefore, Westfield may demand, and the Principal shall deposit with Westfield, cash or other collateral to secure the Principal's obligations under the Indemnity Agreement, in kind and amount satisfactory to Westfield in its sole discretion.

35. As reflected by **Exhibit 3**, Westfield has demanded that the Principal deposit $700,000 with Westfield as collateral security for their exoneration, indemnification, and other obligations to Westfield relative to the Principal's Bonds.

36.     Despite Westfield's demand, the Principal has not deposited **any** collateral with Westfield, which constitutes a material breach of Paragraph SECOND of the Indemnity Agreement.

37.     The Principal's breach of Paragraph SECOND of the Indemnity Agreement has immediately and irreparably damaged Westfield.

38.     Westfield does not possess an adequate remedy at law in relation to the Principal's breach of Paragraph SECOND of the Indemnity Agreement.

39.     Westfield is therefore entitled to the entry of an injunction/judgment compelling the Principal to deposit collateral with Westfield in the amount of $700,000 as collateral security for their exoneration, indemnification, and other obligations to Westfield relative to the Principal's Bonds (though Westfield expressly reserves the right to demand additional collateral in the future).

## COUNT III – Specific Performance (*i.e.*, Access to Books and Records)

40.     Westfield hereby restates the allegations contained in the foregoing paragraph of this Complaint for Indemnity and Equitable Relief as if fully set forth herein.

41.     Under Paragraph ELEVENTH of the Indemnity Agreement, until the Principal's liability to Westfield under the Indemnity Agreement is terminated, Westfield may demand the reasonable access to the books, records, and accounts of the Principal, and the Principal has a continuing obligation to allow Westfield reasonable access to its books, records, and accounts.

42.      Without reasonable and immediate access to all of the Principal's books, records, and other documents, Westfield is deprived of its ability to investigate/exercise the various rights assigned to Westfield under Paragraph ELEVENTH of the Indemnity Agreement, is deprived of its ability to investigate/exercise the most effective means of minimizing its potential losses under

the Principal's Bonds, and is deprived of its ability to investigate/exercise its various rights against the Indemnitors.

43. Despite Westfield's demands, the Principal has failed to provide reasonable access to the Principal's books, records, and accounts which constitutes a material breach of Paragraph ELEVENTH of the Indemnity Agreement.

44. The Principal's breach of Paragraph ELEVENTH of the Indemnity Agreement has immediately and irreparably harmed Westfield.

45. Westfield does not possess an adequate remedy at law in relation to the Principal's breach of Paragraph ELEVENTH of the Indemnity Agreement.

46. Westfield is therefore entitled to, among other things, the entry of a preliminary injunction and/or judgment compelling specific performance of the Principal's duty to provide Westfield reasonable access to the Principal's books, records, and accounts.

## COUNT IV – Equitable Indemnity, Reimbursement and Exoneration Against the Principal

47. Westfield hereby restates the allegations contained in the foregoing paragraphs of this Complaint for Indemnity and Equitable Relief as if fully set forth herein.

48. Pursuant to common law right of exoneration, indemnification, and reimbursement, Westfield is entitled to exoneration, indemnification, and/or reimbursement from the Principal, as the principal on the Principal's Bonds, for all loss suffered by Westfield, as surety, by reason of having issued the Principal's Bonds on behalf of the Principal.

49. Therefore, the Principal is liable to Westfield for all losses suffered and anticipated to be suffered by Westfield by reason of having issued the Principal's Bonds on behalf of the Principal, which amount currently exceeds $132,000 and will be proven at trial.

## COUNT V – *Quia Timet*

50.     Westfield hereby restates the allegations contained in the foregoing paragraphs of this Complaint for Indemnity and Equitable Relief as if fully set forth herein.

51.     Pursuant to its equitable remedy of *quia timet*, Westfield is entitled to be provided money and/or property by the Principal sufficient to exonerate Westfield, as surety, from and against any loss that has resulted to Westfield by reason of having executed the Principal's Bods, which amount currently exceeds $132,000 and will be proven at trial.

## COUNT VI – Conversion of Trust Funds by Defendants Jacob Norris and Justin Norris

52.     Westfield hereby restates the allegations contained in the foregoing paragraphs of this Complaint for Indemnity and Equitable Relief as if fully set forth herein.

53.     Under Paragraph FOURTH of the Indemnity Agreement, the Principal agreed, among other things, that all monies due and to become due under any of the Bonded Contracts would be deemed trust funds for the benefit of and for payment of all obligation incurred in the performance of the Bonded Contracts and for labor, material, and services furnished in connection with the Bonded Contracts, and for the benefit of Westfield for any liability or loss Westfield may have or sustain under the Principal's Bonds.

54.     As detailed herein, all proceeds of the Bonded Contracts the Principal received from the Obligees were impressed with a trust under Tennessee law (express, constructive and/or resulting) for the benefit of the Principal's subcontractors/suppliers on the Bonded Projects and/or Westfield.

55.     By virtue of their execution of the Indemnity Agreement on behalf of the Principal, the Principal's Members possessed actual knowledge that all proceeds of the Bonded Contracts the Principal received from the obligees of Bonded Projects were impressed with a trust under

Tennessee law (express, constructive, and/or resulting) for the benefit of the Principal's subcontractors/suppliers on the Bonded Projects and/or Westfield.

56.     Furthermore, the Principal's Members possessed actual knowledge that all payments from the obligees to the Principal under the Bonded Projects were made for the special purpose of the Principal's payment to its subcontractors/suppliers from those proceeds for the work they performed on the Bonded Projects.

57.     The Principal's Members also had actual knowledge that all payments from the obligees to the Principal under the Bonded Contracts were made for the special purpose of the Principal's payment to its subcontractors/suppliers from those proceeds for the work they performed on the Bonded Contracts.

58.     Despite the Principal's Members actual knowledge of the trust fund nature and/or special purpose of the proceeds of the Bonded Contracts, the Members, upon information and belief, accepted, directed the Principal to improperly use, or otherwise used certain proceeds of the Bonded Contracts for purposes other than the Principal's payment to subcontractors/suppliers for work they performed on the Bonded Projects and/or to satisfy the conditions of the Principal's Bonds.

59.     To the extent they accepted or directed the Principal to improperly use, and/or other use of certain proceeds of the Bonded Contracts, the Principal's Members exercised dominion over and/or appropriated the proceeds of the Bonded Contracts in defiance of the rights of the Principal's subcontractors/suppliers and Westfield to those proceeds.

60.     By virtue of its performance under the Principal's Bonds, Westfield has become and continues to become equitably subrogated to any rights the Principal's subcontractors/suppliers on the Bonded Projects may possess against the Principal and others,

including the Principal's Members, relative to amounts owed to those subcontractors/suppliers for work they performed on the Bonded Projects, including the legal/equitable interests those subcontractors/suppliers possess in relation to the proceeds of the Bonded Contracts.

61.     Therefore, Westfield possesses a conversion claim against the Principal's Members, independently and by virtue of equitable subrogation, relative to the Principal's Members wrongful/unlawful exercise of dominion and/or appropriation of the proceeds of the Bonded Contracts.

62.     Accordingly, Westfield is entitled to a judgment against the Principal's Members in an amount equal to any proceeds of the Bonded Contracts the Principal's Members may have accepted, directed the Principal to improperly use, and/or otherwise used for purposes other than the Principal's payment to subcontractors/suppliers for work they performed on the Bonded Projects and/or to satisfy the conditions of the Principal's Bonds.

### COUNT VII – Aiding and Abetting Breach of Fiduciary Duty by Defendants Jacob Norris and Justin Norris

63.     Westfield hereby restates the allegations contained in the foregoing paragraphs of this Complaint for Indemnity and Equitable Relief as if fully set forth herein.

64.     As detailed herein, all proceeds of the Bonded Contracts the Principal received from the obligees of the Bonded Projects were impressed with a trust under Tennessee law (express, constructive and/or resulting) for the benefit of the Principal's subcontractors/suppliers on the Bonded Projects and/or Westfield.

65.     By virtue of their execution of the Indemnity Agreement on behalf of the Principal, the Principal's Members possessed actual knowledge that all proceeds of the Bonded Contracts the Principal received from the obligees of Bonded Projects were impressed with a trust under

Tennessee law (express, constructive, and/or resulting) for the benefit of the Principal's subcontractors/suppliers on the Bonded Projects and/or Westfield.

66.     By virtue of the trust nature of the proceeds of the Bonded Contracts, the Principal's use of the proceeds of the Bonded Contracts for any purpose other than the Principal's payment to subcontractors/suppliers for work they performed on the Bonded Projects and/or to satisfy the conditions of the Principal's Bonds would constitute a breach of the fiduciary duty the Principal owed to Westfield.

67.     Despite their actual knowledge that such conduct would constitute a breach of fiduciary duty the Principal owed to Westfield, the Principal's Members, upon information belief, accepted, directed the Principal to improperly use, or otherwise used certain proceeds of the Bonded Contacts for purposes other than the Principal's payment to subcontractors/suppliers for work they performed on the Bonded Projects and/or the satisfaction of the conditions of the Principal's Bonds.

68.     Despite their actual knowledge that such conduct would constitute a breach of fiduciary duty the Principal owed to Westfield, the Principal's Members, upon information belief, also encouraged, substantially assisted, and/or participated in the Principal's use of certain proceeds of the Bonded Contacts for purposes other than the Principal's payment to subcontractors/suppliers for work they performed on the Bonded Projects and/or the satisfaction of the conditions of the Principal's Bonds.

69.     Therefore, to the extent the Principal's Members encouraged, substantially assisted, and/or participated in the Principal's use of certain proceeds of the Bonded Contacts for purposes other than the Principal's payment to subcontractors/suppliers for work they performed on the Bonded Projects and/or the satisfaction of the conditions of the Principal's Bonds, Westfield

possesses a claim against the Principal's Members for aiding and abetting the Principal's breach of the fiduciary duty it owed to Westfield in an amount that currently exceeds $132,000 and will be proven at trial.

**COUNT VIII – Money Had and Received**
**by Defendants Jacob Norris and Justin Norris**

70.     Westfield hereby restates the allegations contained in the foregoing paragraphs of this Complaint for Indemnity and Equitable Relief as if fully set forth herein.

71.     As detailed herein, the Principal's Members, upon information and belief, have received proceeds of the Bonded Contracts under circumstances that in equity and good conscience the Principal's Members ought not retain them and in justice and fairness they belong to Westfield, the equitable titleholder of the proceeds of the Bonded Contracts.

72.     Therefore, to the extent the Principal's Members have received proceeds of the Bonded Contracts under circumstances that in equity and good conscience the Principal's Members ought not retain them and in justice and fairness they belong to Westfield, Westfield possesses a claim against the Principal's Members for money had and received and is entitled to judgment in the amount of the proceeds of the Bonded Contracts the Principal's Members inequitably received.

WHEREFORE, PREMISES CONSIDERED, Westfield prays for the following relief:

a)      For the issuance of process requiring each of the Defendants to answer Westfield's Complaint for Indemnity and Equitable Relief;

b)      For the entry of judgment against the Principal in an amount sufficient to fully exonerate and indemnify Westfield from and against any and all liability for losses and/or expenses of whatsoever kind (including, but not limited to, interest, court costs, and counsel fees) and from and against any and all such losses and/or expenses which Westfield may sustain (a) by reason of having executed the Principal's Bond, (b) by reason of the failure of the Principal to perform or comply with the covenants and conditions of the Indemnity Agreement, or (c) in enforcing

any of the covenants and conditions of the Indemnity Agreement, which amount currently exceeds $132,000 and will be proven at trial,

c)     For the entry of preliminary injunction and/or judgment compelling the Principal to deposit collateral with Westfield totaling $700,000 as security for their exoneration, indemnification, and other obligations to Westfield relative to the Principal's Bond (though Westfield expressly reserves the right to demand additional collateral in the future);

d)     For the entry of a preliminary injunction and/or judgment compelling specific performance of the Principal's duty to provide Westfield reasonable access to the Principal's books, records, and accounts;

e)     For a judgment against the Principal for all losses suffered and anticipated to be suffered by Westfield by reason of having issued the Principal's Bonds on behalf of the Principal, which amount currently exceeds $132,000 and will be proven at trial;

f)     For the entry of judgment against the Principal for money and/or property sufficient to exonerate Westfield, as surety, from and against any loss that has resulted to Westfield by reason of having executed the Principal's Bonds, which amount currently exceeds $132,000 and will be proven at trial;

g)     For the entry of a judgment against the Principal's Members in an amount equal to the proceeds of any Bonded Contracts the Principal's Members converted to use for purposes other than the Principal's payment to subcontractors/suppliers for work they performed on the Bonded Projects and/or to satisfy the conditions of the Principal's Bonds, which amount will be proven at trial;

h)     For the entry of a judgment against the Principal's Members for aiding and abetting breach of fiduciary duty in an amount equal to the proceeds of any Bonded Contracts in relation to which the Principal's Members encouraged, substantially assisted, and/or participated in the Principal's use of proceeds of the Bonded Contacts for purposes other than the Principal's payment to subcontractors/suppliers for work they performed on the Bonded Projects and/or the satisfaction of the conditions of the Principal's Bonds, which amount will be proven at trial;

i)     For the entry of a judgment against the Principal's Members for money had and received to the extent the Principal's Members have received proceeds of the Bonded Contracts under circumstances that in equity and good conscience the Principal's Members ought not retain them and in justice and fairness they belong to Westfield, which amount will be proven at trial; and

j)     For such further relief, both general and specific, as may be appropriate in accordance with the nature of this cause including, but not limited to, pre-judgment and post-judgment interest.

Respectfully submitted,

*/s/ Jarrod W. Stone*

Jarrod W. Stone          TN Bar No. 023915
J. Caralisa Connell     BPR No. 36298
MANIER & HEROD
1201 Demonbreun Street, Suite 900
Nashville, Tennessee 37203
Phone: (615) 244-0030
Fax: (615) 242-4203
JStone@ManierHerod.com
CConnell@ManierHerod.com

*Attorneys for Westfield Insurance Company*