# MANIER & HEROD

### A TENNESSEE PROFESSIONAL CORPORATION

TERRY L. HILL
TOMMY C. ESTES
JOHN M. GILLUM°
SAM H. POTEET, JR.
DAVID J. DEMING
MARY PATY LYNN LEVAN
FRED C. STATUM III
JAMES H. TUCKER, JR.
SARAH HARDISON REISNER
JOHN W. BARRINGER, JR.
JEFFREY S. PRICE†
MICHAEL L. HAYNIE
MICHAEL E. COLLINS∞
SCOTT C. WILLIAMSᵞ

◊ ALSO LICENSED IN NEW YORK
† ALSO LICENSED IN NORTH CAROLINA
∞ ALSO LICENSED IN TEXAS
ᵞ ALSO LICENSED IN MISSOURI

DAVID DROBNY
HEATHER H. DOUGLAS
JARROD W. STONE†
JUSTIN D. WEAR◊
MELISSA JANE LEE
LAURENN S. DISSPAYNE
DR. PATRICIA TILL∞
ROBERT W. MILLER†
ADRIENNE B. FAZIO⁊
M. STEELE CANTEYᵞ
J. CARALISA CONNELL
JOHN MICHAEL ALLEN

± ALSO LICENSED IN KENTUCKY AND OHIO
∞ LICENSED ONLY IN MICHIGAN AND GERMANY
⨯ ALSO LICENSED IN ARKANSAS
λ ALSO LICENSED IN GEORGIA
⊓ ALSO LICENSED IN MISSISSIPPI, ALABAMA AND
THE DISTRICT OF COLUMBIA

1201 DEMONBREUN STREET, SUITE 900
NASHVILLE, TENNESSEE 37203

TELEPHONE (615) 244-0030
FACSIMILE (615) 242-4203

(615) 742-9314
DIRECT DIAL NUMBER

JStone@ManierHerod.com
E-MAIL ADDRESS

October 5, 2018

**VIA E-MAIL**
Kenneth M. Chadwell
Looney, Looney & Chadwell
156 Rector Avenue
Crossville, Tennessee 38555

**VIA E-MAIL**
Christopher D. Cravens
Burrow & Cravens
1700 Hayes Street, Suite 202
Nashville, Tennessee 37203

**VIA E-MAIL**
Kyle M. Winslow
Hemmer DeFrank Wessels
250 Grandview Drive, Suite 500
Fort Mitchell, Kentucky 47017

Re: Norris Brothers Excavating, LLC

Gentlemen:

My firm has been retained to represent Westfield Insurance Company ("Westfield") in relation to various surety bonds that Westfield issued on behalf of Norris Brothers Excavating, LLC ("Norris Brothers") in Tennessee, Kentucky, and Ohio (collectively, the "Bonds"). I understand that each of you represents Norris Brothers in relation to one or more claims that have been asserted against the Bonds. Please accept this letter as additional notice that Norris Brothers has breached its obligations to Westfield under the Agreement of Indemnity attached hereto as **Exhibit 1** (the "Indemnity Agreement") by, among other things, failing to (1) collateralize Westfield and (2) furnish reasonable access to Norris Brothers' books, records, accounts, etc. Norris Brothers' breach of the Indemnity Agreement left Westfield with no choice but to initiate a civil action against Norris Brothers, Justin Norris, and Jacob Norris.

Pursuant to the Indemnity Agreement, Westfield demands that Norris Brothers deposit cash or other collateral acceptable to Westfield, in its sole discretion, in the amount of $1,000,000 relative to the significant liability that has been asserted against Westfield under the Bonds. Among other things, the Indemnity Agreement obligates Norris Brothers to exonerate

and indemnify Westfield from and against any liability for losses and any losses Westfield actually sustains, including attorneys' fees, by reason of issuing the Bonds. Norris Brothers' duty to exonerate/indemnify Westfield "against any and all liability for losses" requires Norris Brothers to pay money or perform acts that will **prevent** Westfield from sustaining a loss in the first place, while Norris Brothers' duty to exonerate/indemnify "from and against any and all such losses" requires it to reimburse Westfield for any losses it actually sustains. More importantly, the Indemnity Agreement expressly obligates Norris Brothers to, upon demand, "**deposit with [Westfield], cash or other collateral to secure the obligations of this Agreement, in kind and amount satisfactory to [Westfield] in its sole discretion.**" (Emphasis added). To date, Westfield has already paid losses of $146,829.71 under the Bonds, and additional liability in excess of $895,351.27 has been asserted against Westfield under the Bonds (such asserted liability being exclusive of Westfield's anticipated fees of attorneys and consultants), for which Norris Brothers is obligated to exonerate/indemnify Westfield from liability under the Indemnity Agreement. The liability that has been asserted against Westfield under the Bonds can be summarized as follows:

| Description of Loss/Liability Asserted | Amount |
|---|---|
| Total Losses Already Paid | $146,829.71 |
| Total Unresolved Liability Asserted Against Payment Bond 4786637 | $195,274.66 |
| Total Unresolved Liability Asserted Against Payment Bond 4786644 | $141,630.90 |
| Total Unresolved Liability Asserted Against Performance Bond 4786646 | $411,616.00 |
| Total Unresolved Liability Asserted Against Performance Bond 4786646 | Unknown |
| **Total** | **In Excess of $895,351.27** |

Norris Brothers also remains obligated under two other Bonds with respective penal sums of $2,967,855 and $3,524,062. Norris Brothers has ignored Westfield's other collateral demands. **Consequently, as permitted by the Indemnity Agreement, Westfield now demands that Norris Brothers deposit cash or other satisfactory collateral totaling $1,000,000 with Westfield to secure Norris Brothers' exoneration/indemnity obligations, including Norris Brothers' duty to exonerate/indemnify Westfield's attorneys' and consultants' fees.**

Westfield also demands that Norris Brothers begin making arrangements to furnish Westfield and/or its attorneys/consultants in-person access to Norris Brothers' books, records, accounts, etc. With respect to Norris Brothers' duty to furnish reasonable access to its books, records, accounts, etc., the Indemnity Agreement states:

> **At any time, and until such time as the liability of the Surety under any and all of the Bonds is terminated, the Surety shall have the right to reasonable**

**access to the books, records, and accounts of [Norris Brothers],** and any bank depository, materialman, supply house, or other person, firm, or corporation when requested by the Surety is hereby authorized to furnish the Surety any information requested including, but not limited to, the status of the work under contracts being performed by [Norris Brothers], the condition of the performance of such contracts and payments of accounts. If requested by the Surety, [Norris Brothers] shall promptly confirm the Surety's rights to any entity or other person referenced above.

(Emphasis added). **Please confirm that Norris Brothers will grant such in-person access at its office on October 23, 2018, which is the day after representatives of Westfield and Norris Brothers will be meeting in Knoxville, Tennessee to discuss settlement possibilities relative to the Town of Jacksboro, TN's claim against Performance Bond 4786646.**

I have attached a courtesy copy of Westfield's Complaint against Norris Brothers, Justin Norris, and Jacob Norris as **Exhibit 2** (without exhibits). Westfield has already started making arrangements to effectuate service of process. Nonetheless, please advise as to whether one of you has authority to accept service of process on behalf of the Defendants. That would eliminate Norris Brothers' responsibility to indemnify Westfield for the cost associated with a private process server. Please also advise as to if/when Norris Brothers intends to fulfill its collateral and record disclosure obligations to Westfield. If Norris Brothers does not voluntarily fill its obligations, Westfield will seek a preliminary injunction compelling Norris Brothers to deposit collateral and to provide access to its books, records, accounts, etc. I hope that does not prove to be necessary. Either way, please direct all further communications regarding the Bonds or Westfield's civil action to my attention.

Very truly yours,

MANIER & HEROD
A Tennessee Professional Corporation

Jarrod W. Stone

JWS
Enclosure
cc:     Daniel Pentecost (via e-mail w/enclosure)

# EXHIBIT 1

Agreement of Indemnity

# Westfield Insurance Co.
# Westfield National Insurance Co.
# Ohio Farmers Insurance Co.
Westfield Group ®
1 Park Circle PO Box 5001, Westfield Center, Ohio  44251-5001

THIS AGREEMENT entered into by and between the undersigned, herein called Indemnitors, on the date below stated, and Westfield Insurance Company and/or Westfield National Insurance Company and/or Ohio Farmers Insurance Company, all located at Westfield Center, Ohio, herein collectively called Surety, witnesseth:

WHEREAS, in the transaction of business, certain bonds, undertakings, and other writings obligatory in the nature of a bond ("Bonds") have been and will be required by or on behalf of the Indemnitors, and application has and/or will be made to the Surety to execute Bonds, and as a prerequisite to the execution of Bonds, the Surety requires complete indemnification; and

WHEREAS, it may be necessary or desirable for the Surety to execute bonds as surety for or on behalf of the Indemnitors; and

WHEREAS, the Indemnitors have a substantial, material, and beneficial interest in obtaining Bonds or in the Surety refraining from cancelling such Bonds; and

NOW THEREFORE, in consideration of the mutual promises and covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Indemnitors for themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, hereby covenant and agree with the Surety, its successors and assigns, as follows:

## PREMIUMS

FIRST:  The Indemnitors will pay to the Surety all premiums and charges of the Surety for each Bond in accordance with its rate filings, its manual of rates, or as otherwise agreed upon, until the Indemnitors shall serve evidence satisfactory to the Surety of its discharge or release from all liability by reason of such Bond.

## INDEMNITY

SECOND:  The Indemnitors shall exonerate and indemnify the Surety from and against any and all liability for losses and/or expenses of whatsoever kind (including, but not limited to, interest, court costs, and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain: (1) by reason of having executed or procured the execution of the Bonds; (2) by reason of the failure of the Indemnitors to perform or comply with the covenants and conditions of this Agreement; or (3) in enforcing any of the covenants and conditions of this Agreement. Whenever liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor, the Surety may demand, and the Indemnitors shall deposit with the Surety, cash or other collateral to secure the obligations of this Agreement, in kind and amount satisfactory to the Surety in its sole discretion. In the event of any payment by the Surety, the Indemnitors further agree that, in any accounting between the Surety and the Indemnitors, the Surety shall be entitled to charge for any disbursements made by it regarding the matters herein contemplated under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety. The Surety shall have every right and remedy which a personal surety without compensation would have, including the right to secure its discharge on any Bond.

## ASSIGNMENT

THIRD:  Each Indemnitor which is a party to a contract for which a Bond is given or is named as the "contractor" or "contracting party" in such Bond (each such Indemnitor being hereinafter referred to as a "Contractor") hereby grants, transfers, sets over and assigns, and will grant, assign, transfer and set over, to the Surety, its successors and assigns (collectively "assigns"): (a) all the rights and claims of the Contractor in, or growing in any manner out of, all contracts referred to in the Bonds, or in, or growing in any manner out of the Bonds; regardless of whether such right or claim is construed as a right or claim in contract, tort, equity or otherwise; (b) all the right, title and interest of the Contractor in and to all machinery, equipment, tools, materials and other personal property, whether tangible or intangible, which are now, or may hereafter be, about or upon the site or sites of any of the contractual work referred to in the Bonds, including

BD 5079 OFWWN (02-2011)                    Page 1 of 10

materials purchased for or chargeable to any contracts referred to in the Bonds, materials which may be in process of construction, in storage elsewhere, or in transportation to any and all of such sites; (c) all the rights, title and interest of the Contractor in and to all subcontracts or purchase orders let or to be let in connection with any contracts referred to in the Bonds, and in and to all surety bonds supporting such subcontracts or purchase orders; (d) all actions, causes of actions, claims and demands whatsoever which the Contractor may have or acquire against any subcontractor, laborer or materialman, or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools or other equipment in connection with or on account of any contracts referred to in the Bonds, and against any surety or sureties of any subcontractor, laborer, or materialman; and (e) any and all percentages retained and any and all sums that may be due or hereafter become due to the Contractor or Indemnitors on account of any and all contracts referred to in the Bonds and all other contracts whether bonded or not in which the Contractor has an interest. All Indemnitors executing this Agreement hereby consent to the foregoing assignments from time to time, as applicable, by the Contractor for such Bonds in favor of the Surety. This assignment shall be effective upon the first occurrence of any of the following events: 1) any abandonment, forfeiture, or breach of any contracts referred to in the Bonds or of any breach of any of the Bonds; or (2) any breach of the provisions of any of the paragraphs of this Agreement; or (3) any default in discharging indebtedness or liabilities to third parties when due, such as, but not limited to, obligations to subcontractors or materialman; or (4) any assignment by the Contractor for the benefit of creditors, or the appointment, or any application for the appointment, of a receiver or trustee for the Contractor whether insolvent or not; or (5) any proceeding which deprives the Contractor of the use of any of the machinery, equipment, plant, tools, materials or other personal property referred to in section (b) of this paragraph; or (6) the Contractor's dying, absconding, disappearing, incompetency, being convicted of a felony, or imprisoned if the Contractor be an individual. This assignment is an absolute transfer and assignment of the foregoing interests to the Surety given to secure the Contractor and other Indemnitors' full and faithful performance of each and all of the paragraphs of this Agreement to be observed or performed by such Contractor or other Indemnitors, as applicable, and any other indebtedness and liabilities of the Contractor or other Indemnitors to the Surety, whether heretofore or hereafter incurred, and such assignment in the case of each contract shall become effective as of the date of each such contract. Notwithstanding any contrary provision in this Agreement, the foregoing assignment shall not act to novate, relieve, waive, limit or impair the Contractor's obligations to any third party under any contract to fully perform and observe all of the terms and conditions of such contract to be performed or observed by the Contractor, such that the Contractor shall at all times remain primarily obligated to such third party to perform and observe all obligations of the Contractor in favor of such third party under such contract. The Indemnitors hereby acknowledge that the Surety shall have the right to apply the proceeds of any transfer or assignment by the Contractor, hereunder or otherwise, to any loss or expense incurred on any project or projects for which the Surety provided a bond for the Contractor and that such rights of the Surety are not limited to the specific project for which the Bonds were provided.

## TRUST FUND

FOURTH: It is expressly understood and declared that all monies due and to become due under any contract or contracts covered by the Bonds are deemed to be trust funds, whether in the possession of the Indemnitors or otherwise, for the benefit of and for payment of all obligations incurred in the performance of the contract and for labor, materials, and services furnished in connection with any such contract or contracts for which the Surety would be liable under any Bond, which trust also inures to the benefit of the Surety for any liability or loss it may have or sustain under any Bond, and this Agreement and declaration shall also constitute notice of such trust.

## SECURITY INTEREST

FIFTH: To secure the Indemnitors' obligations under this Agreement, and to secure any other indebtedness and liabilities of any Indemnitor to the Surety under any Bond or otherwise, each Indemnitor hereby grants to the Surety a security interest in, and lien on, all of such Indemnitor's right, title and interest in any and all of the Indemnitor's property, whether now owned or hereafter acquired, created, or arising, including, but not limited to, the following assets (collectively, the "Collateral"): (a) all of such Indemnitor's accounts, accounts receivable, notes receivable chattel paper, commercial tort claims, deposit accounts, documents, machinery, equipment, fixtures, instruments, inventory, investment property (including certificated and uncertificated securities), general intangibles, goods (including rights to returned or repossessed goods and rights of stoppage in transit), cash and cash equivalents, contract rights and claims, payment intangibles, and supporting obligations, agreements, and letter of credit rights, proceeds of letters of credit, promissory notes, records, software, franchises, customer lists, insurance receivables and refunds, tax refund claims, pension plan refunds, pension plan reversions, patents, patent applications, service marks, service mark applications, trademarks, trademark applications, trade names, trade secrets, goodwill, copyrights, copyright applications, and licenses; (b) all supporting obligations of, attachments, accessions, parts and appurtenances to, substitutions for, replacements of, products and proceeds including cash proceeds, noncash proceeds and proceeds of any insurance of, any and all of the Collateral.

The Indemnitors shall perform any and all steps and take all actions reasonably required by the Surety from time to time to perfect, maintain, protect, and enforce the Surety's security interest in, and lien on, the Collateral. The Indemnitors hereby irrevocably authorize the Surety at any time and from time to time to file in any filing office in any

Case 2:18-cv-00081    Document 20-6    Filed 11/19/18    Page 6 of 35 PageID #: 312

jurisdiction any financing statements and amendments required to evidence the Surety's security interest in the Collateral. The Indemnitors hereby irrevocably authorize the Surety at any time and from time to time to correct or complete, or to cause to be corrected or completed, any financing statements, continuation statements or other such documents as have been filed. At the Surety's request, the Indemnitors will execute notices appropriate under any applicable requirements of law that the Surety reasonably requests to evidence, perfect, or protect its security interest in and other liens on the Collateral in such form(s) as are satisfactory to the Surety. The Surety is hereby authorized to give notice to any creditor, bailee, consignee, warehouseman, landlord or any other person as may be reasonably necessary under applicable laws to evidence, protect, perfect, or enforce the security interest and lien granted to the Surety in the Collateral. The Indemnitors will insure the Collateral and maintain the Collateral, as the same is constituted from time to time, free and clear of all liens and the Indemnitors will defend or cause to be defended the Collateral against all of the claims and demands of all persons whomsoever. Upon a default under this Agreement, the Surety may immediately, at any time, exercise all rights that it has under applicable law (including the Uniform Commercial Code), at equity, or as additionally provided by in this Agreement. Such rights shall include the right to apply for the appointment of a receiver under applicable law by a court of competent jurisdiction. This Agreement, or any photographic or other reproduction of this Agreement, shall constitute a Security Agreement to the Surety and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect and may be so used by the Surety without in any way abrogating, restricting or limiting the rights of the Surety under this Agreement or under law, or in equity.

## TAKEOVER/CURE

SIXTH: The Indemnitors hereunder warrant, covenant and agree with the Surety that the applicable Contractor under any Bond shall fully and timely observe and perform all of the terms and conditions of the underlying contract, and all other related documents and instruments pertaining to such Bond, that are required to be observed or performed by the Contractor thereunder, such that the applicable Contractor shall not cause or allow a default or breach by such Contractor to occur or remain uncured under such contract or other related documents and instruments pertaining to such Bond. In the event of any breach or default asserted by the obligee in any Bond, or in the event the Contractor has abandoned the work on or forfeited any contract or contracts covered by any Bond, or has failed to pay obligations incurred in connection with any such contracts, or in the event of the death, disappearance, criminal conviction imprisonment, incompetency, insolvency, or bankruptcy of the Contractor, or the appointment of a receiver or trustee for the Contractor, or the property of the Contractor, or in the event of an assignment for the benefit of creditors of the Contractor, or if any action is taken by or against the Contractor under or by virtue of the Bankruptcy Code, or should reorganization or arrangement proceedings be filed by or against the Contractor under such Code, or if any action is taken by or against the Contractor under the insolvency laws of any state, possession, or territory of the United States, then, without limiting any other rights of remedies of the Surety under this Agreement, the Surety shall have the additional right, at its option and in its sole discretion, and is hereby authorized, with or without exercising any other right or option conferred upon it by law or in the terms of this Agreement, to take possession (either temporarily or permanently) of any part or all of the work under any contract or contracts covered by any of the Bonds, and at the expense of the Indemnitors to complete or arrange for the completion of the same, and the Indemnitors shall, promptly upon demand, pay to the Surety all losses and expenses so incurred. In addition to the Surety's rights described above, in the event the Contractor is not fully performing the underlying contract as required above, the Surety shall have the right to correct any such failure without taking possession of the work and the Indemnitors shall, promptly upon demand, pay to the Surety all losses and expenses so incurred.

## CHANGES

SEVENTH: The Surety is authorized and empowered, without notice to or knowledge of the Indemnitors, to assent to any change whatsoever in the Bonds, and/or any contracts referred to in the Bonds, and/or in the general conditions, plans and/or in the specifications accompanying such contracts, including, but not limited to, any change in the time for the completion of such contracts and to payments or advances thereunder before the same may be due, and to assent to or take any assignment or assignments, to execute or consent to the execution of any continuations, extensions or renewals of the Bonds and to execute any substitute or substitutes therefore, with the same or different conditions, provisions and obligees and with the same or larger or smaller penalties, it being expressly understood and agreed that the Indemnitors shall remain bound under the terms of this Agreement even though any such assent by the Surety does or might substantially increase the liability of the Indemnitors.

## INDIVIDUAL SETTLEMENT

EIGHTH: In the event of any claim or demand being made by the Surety against the Indemnitors, or any one or more of the Indemnitors, by reason of the execution of a Bond or Bonds, the Surety is hereby expressly authorized to settle with any one or more of the Indemnitors individually, and without reference to the others, and such settlement or composition shall not affect the liability of any of the others, and the Indemnitors hereby expressly waive the right to be discharged and released by reason of the release of one or more of the Indemnitors, and hereby consent to any settlement or composition that may hereafter be made.

Case 2:18-cv-00081   Document 20-6   Filed 11/19/18   Page 7 of 35 PageID #: 313

## EACH PARTY BOUND

NINTH: The liability of the Indemnitors hereunder shall not be affected by the failure of the Contractor or any other Indemnitor to sign any Bond, nor by any claim that other indemnity or security was to have been obtained, nor by the release of any indemnity, nor the return or exchange of any collateral that may have been obtained, and if any party signing this Agreement is not bound for any reason, this Agreement shall still be binding upon each and every other party.

## ADVANCES

TENTH: The Surety is authorized and empowered, but not obligated, to guarantee loans, to advance or lend to the Contractor any money, which the Surety, in its sole and absolute discretion, may see fit, for the purpose of any contracts referred to in, or guaranteed by any Bond; and all money expended in the completion of any such contracts by the Surety, or lent or advanced from time to time to the Contractor, or guaranteed by the Surety for the purposes of any such contracts, and all costs, and expenses incurred by the Surety in relation thereto, unless repaid with legal interest by the Contractor to the Surety when due, shall be presumed to be a loss by the Surety for which the Indemnitors shall be responsible, notwithstanding that such money or any part thereof is not so used by the Contractor.

## BOOKS AND RECORDS

ELEVENTH: At any time, and until such time, as the liability of the Surety under any and all of the Bonds, is terminated, the Surety shall have the right to reasonable access to the books, records, and accounts of the Indemnitors; and any bank depository, materialman, supply house, or other person, firm, or corporation, when requested by the Surety is hereby authorized to furnish the Surety any information requested including, but not limited to, the status of the work under contracts being performed by the Contractor; the condition of the performance of such contracts and payments of accounts. If requested by the Surety, the Contractor shall promptly confirm the Surety's rights to any entity or other person referenced above.

## DECLINE EXECUTION

TWELFTH: Unless otherwise specifically agreed in writing, the Surety may decline to execute or renew any Bond and the Indemnitors agree to make no claim to the contrary in consideration of the Surety's receipt of this Agreement; and, if the Surety shall execute a Bid or Proposal Bond, it shall have the right to decline to execute any and all of the Bonds that may be required in connection with any award that may be made under the proposal for which the Bid or Proposal Bond is given and such declination shall not diminish or alter the liability that may arise by reason of having executed the Bid or Proposal Bond. The Indemnitors hereby waive any and all claims against the Surety relative to such declinations.

## NOTICE OF EXECUTION

THIRTEENTH: The Indemnitors hereby waive notice of the execution of any Bond and of the acceptance of this Agreement, and the Indemnitors hereby waive all notice of any default, or any other act or acts giving rise to any claim under any of the Bonds, as well as notice of any and all liability of the Surety under any Bond, and any and all liability on their part hereunder; and the Indemnitors hereby waive notice of any other fact or circumstance which might materially increase their risk, to the end and effect that the Indemnitors shall be and continue to be liable hereunder, notwithstanding any notice of any kind to which they might have been or be entitled, and notwithstanding any defenses they might have been entitled to make.

## WAIVER OF EXEMPTION

FOURTEENTH: The Indemnitors hereby waive, so far as their respective obligations under this Agreement are concerned, all rights to claim any of their property, including their respective homesteads, as exempt from levy, execution, sale or other legal process under the laws of any state, country, or other governmental body.

## SETTLEMENTS

FIFTEENTH: The Surety shall have the right to adjust, settle or compromise any claim, demand, suit or judgment related in any way to the Bond or contracts referenced in the Bond, whether arising on behalf of itself or in the name of any Contractor or other Indemnitor hereunder; and any such adjustment, settlement or compromise entered into by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety from the Indemnitors hereunder by reason of such adjustment, settlement or compromise.

## BROADLY CONSTRUED

SIXTEENTH: The Indemnitors agree that their liability shall be construed as broadly as the liability of the Surety, regardless of whether such liability is incurred as a result of claims presented in contract, tort, equity, or otherwise,

## INTERPRETATION

SEVENTEENTH: The word Indemnitors, or personal pronouns used to refer to said word, shall apply regardless of number or gender, and to individuals, partnerships or corporations, as the circumstances require.

Case 2:18-cv-00081    Document 20-6    Filed 11/19/18    Page 8 of 35 PageID #: 314

## OTHER SURETIES

EIGHTEENTH: In the event the Surety procures the execution of any Bond by other sureties, or executes any Bond with co-sureties, or reinsures any portion of any Bond with reinsuring sureties, then all the terms and conditions of this Agreement shall inure to the benefit of such other sureties, co-sureties and reinsuring sureties, as their interests may appear.

## SUITS

NINETEENTH: Separate suits may be brought hereunder as causes of action accrue, and the bringing of suit or the recovery of judgment upon any cause of action shall not prejudice or bar the bringing of other suits upon other causes of action, whether theretofore or thereafter arising. The Surety shall be entitled to enforce the obligations hereof directly against any Indemnitor, without the necessity of first proceeding against any other particular Indemnitor or Indemnitors.

## OTHER INDEMNITY

TWENTIETH: The Indemnitors shall continue to remain bound under the terms of this Agreement even though the Surety may have from time to time heretofore or hereafter, with or without notice to or knowledge of the Indemnitors, accepted or released other agreements of indemnity or collateral in connection with the execution or procurement of any Bond, from the Indemnitors or others, it being expressly understood and agreed by the Indemnitors that any and all other rights which the Surety may have or acquire against the Indemnitors and/or others under any such other or additional agreements of indemnity or collateral shall be in addition to, and not in lieu of, the rights afforded the Surety under this Agreement.

## SEVERABILITY

TWENTY-FIRST: In case any of the parties mentioned in this Agreement fail to execute the same, or in case the execution hereof by any of the parties be defective or invalid for any reason, such failure, defect or invalidity shall not in any manner affect the validity of this Agreement or the liability hereunder of any of the parties executing the same, but each and every party so executing shall be and remain fully bound and liable hereunder to the same extent as if such failure, defect or invalidity had not existed. It is understood and agreed by the Indemnitors that the rights, powers, and remedies given the Surety under this Agreement shall be and are in addition to, and not in lieu of, any and all other rights, powers, and remedies which the Surety may have or acquire against the Indemnitors or others whether by the terms of any other agreement or by operation of law or otherwise. Invalidity of any provision or portion of this Agreement by reason of the laws of any state or for any other reason shall not render the other provisions or portions hereof invalid.

## ATTORNEY IN FACT

TWENTY-SECOND: The Indemnitors hereby irrevocably nominate, constitute, appoint, and designate the Surety as their attorney-in-fact, coupled with an interest, to exercise, at the Surety's sole and absolute discretion, all of the rights granted, assigned, transferred and set over to the Surety in this Agreement, in the name of the Indemnitors, or otherwise, including but not limited to the right to: (1) endorse negotiable instruments and to make, execute, and deliver any and all additional or other assignments, documents or papers deemed necessary and proper by the Surety in order to give full effect not only to the intent and meaning of the within assignments, but also the full protection intended to be herein given to the Surety under all other provisions of this Agreement, (2) collect any and monies due the Contractor from contracts referred to in the Bonds, (3) prosecute or file any claim, action, or proceeding, and compromise or settle any and all claims, which any Indemnitor may have against any other Indemnitors or against any third party, and (4) sign and file on behalf of each Indemnitor a UCC-1 form naming the Surety as a secured party. The Indemnitors hereby ratify and confirm all acts and actions taken by the Surety as such attorney-in-fact.

## TERMINATION

TWENTY-THIRD: This Agreement may be terminated by the Indemnitors to be effective twenty days after receipt of written notice by certified mail by the Surety at its home office at One Park Circle, Westfield Center, Ohio 44251-5001, Attn; Surety Department, but any such notice of termination shall not operate to modify, bar, or discharge the Indemnitors as to the Bonds that may have been executed prior to such effective date, such that all promises, obligations, liens, security interests against Collateral, the Collateral, and the liabilities of the Indemnitors hereunder that arose, accrued, attached and/or perfected prior to such effective date of termination shall survive indefinitely, notwithstanding the giving of such notice of termination by such party. Notice of termination shall operate only with respect to those undersigned upon whose behalf such notice of termination is given.

## ENTIRE AGREEMENT

TWENTY-FOURTH: This Agreement constitutes the entire agreement of the parties and supersedes all prior or contemporaneous communications, and representations, whether oral or written, except that any other agreements of indemnity between the Surety and the Indemnitors, or any of them, shall remain in full force and effect. The Indemnitors acknowledge that they are relying on no written or oral representation, warranty, or understanding of any kind other than, as set forth in this Agreement. This Agreement may not be modified except in writing signed by all parties.

Case 2:18-cv-00081    Document 20-6    Filed 11/19/18    Page 9 of 35 PageID #: 315

**TWENTY-FIFTH:** THE INDEMNITORS HEREBY ACKNOWLEDGE THAT THIS AGREEMENT IS INTENDED TO COVER WHATEVER BONDS (WHETHER OR NOT COVERED BY ANY OTHER AGREEMENT OF INDEMNITY SIGNED AT ANY TIME BY ANY ONE OR MORE OF THE INDEMNITORS, ALL OTHER AGREEMENTS OF INDEMNITY OF ANY KIND BEING SUPPLEMENTAL TO THIS), MAY BE EXECUTED BY THE SURETY ON BEHALF OF THE INDEMNITORS, OR ANY ONE OF THEM (WHETHER CONTRACTING ALONE OR AS A JOINT OR CO-VENTURER), FROM TIME TO TIME, AND OVER AN INDEFINITE PERIOD OF YEARS, UNTIL THIS AGREEMENT SHALL BE CANCELED IN ACCORDANCE WITH THE TERMS HEREOF.

## WARRANTY OF FINANCIAL INFORMATION

**TWENTY-SIXTH:** The Indemnitors hereby warrant the accuracy of all financial statements submitted or to be submitted to the Surety, and covenant and agree that the assets described therein are dedicated to and imposed with a trust for the purpose of this Agreement. Such assets shall not be sold, transferred or conveyed by the Indemnitors to any other person, trust, or other legal entity for less than fair market value, without the prior written permission of the Surety. The Indemnitors hereby authorize the Surety to obtain additional information, including information from a credit report, now or at any time in the future, from any third party, about each Indemnitor. No delay on the part of the Surety in exercising any options, powers or rights, or the partial or single exercise thereof, shall constitute a waiver thereof. Each Indemnitor will promptly provide to the Surety upon the Surety's request current financial statements in form and detail satisfactory to Surety.

## NO WAIVER

**TWENTY-SEVENTH:** No waiver of any rights hereunder, and no modification or amendment of this Agreement, shall be deemed to be made by the Surety unless the same shall be in writing, duly signed on behalf of the Surety, and each such waiver (if any) shall apply only with respect to the specific instance involved and shall in no way impair the rights of the Surety or the obligations of the Indemnitors to the Surety in any other respect at any other time.

## MISCELLANEOUS

**TWENTY-EIGHTH:** The Indemnitors hereby specifically covenant and agree that the execution of any Bond or Bonds prior to the date of this Agreement was in consideration for, pursuant to, and in reliance upon the agreement of the Indemnitors made previous to the date of any such Bond or Bonds to execute this Agreement. The Indemnitors further covenant and agree to be bound by all the terms and conditions of this Agreement with respect to such bonds executed prior to the date of this Agreement. When used in this Agreement, the word "including" shall mean "including but not limited to".

**TWENTY-NINTH:** _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**FRAUD WARNINGS:**
ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR ANOTHER PERSON FILES AN APPLICATION FOR INSURANCE CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS THE PERSON TO CRIMINAL AND CIVIL PENALTIES. (Not applicable in AK, AZ, CA, CO, DC, FL, HI, LA, MA, MD, ME, MI, MN, NJ, NY, OH, OK, OR, PA, RI, TN, VA, VT or WA.)

APPLICABLE IN ALASKA, ARIZONA, MAINE, TENNESSEE - IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES OR A DENIAL OF INSURANCE BENEFITS.

APPLICABLE IN COLORADO - APPLICATION SUPPLEMENT FOR SURETY - IT IS UNLAWFUL TO KNOWINGLY PROVIDE FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES, DENIAL OF INSURANCE AND CIVIL DAMAGES. ANY INSURANCE COMPANY OR AGENT

Case 2:18-cv-00081     Document 20-6     Filed 11/19/18     Page 10 of 35 PageID #: 316

OF AN INSURANCE COMPANY WHO KNOWINGLY PROVIDES FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO A POLICYHOLDER OR CLAIMANT FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE POLICYHOLDER OR CLAIMANT WITH REGARD TO A SETTLEMENT OR AWARD PAYABLE FROM INSURANCE PROCEEDS SHALL BE REPORTED TO THE COLORADO DIVISION OF INSURANCE WITHIN THE DEPARTMENT OF REGULATORY AGENCIES.

APPLICABLE IN WASHINGTON, DC – IT IS A CRIME TO KNOWLINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURER FOR THE PURPOSE OF DEFRAUDING THE INSURER OR ANY PERSON. PENALTIES INCLUDE IMPRISONMENT AND/OR FINES. IN ADDITION, AN INSURER MAY DENY INSURANCE BENEFITS IF FALSE INFORMATION MATERIALLY RELATED TO A CLAIM WAS PROVIDED BY THE APPLICANT.

APPLICABLE IN FLORIDA – ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE.

APPLICABLE IN HAWAII – FOR YOUR PROTECTION, HAWAII LAW REQUIRES YOU TO BE INFORMED THAT PRESENTING A FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT IS A CRIME PUNISHABLE BY FINES OR IMPRISONMENT, OR BOTH.

APPLICABLE IN LOUISIANA, RHODE ISLAND – ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWLINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.

APPLICABLE IN MARYLAND – ANY PERSON WHO KNOWINGLY AND WILLFULLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR WHO KNOWINGLY AND WILLFULLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.

APPLICABLE IN MICHIGAN – ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE OR DEFRAUD ANY INSURER FILES AN APPLICATION OR CLAIM CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION SHALL, UPON CONVICTION, BE SUBJECT TO IMPRISONMENT FOR UP TO ONE YEAR FOR A MISDEMEANOR CONVICTION OR UP TO TEN YEARS FOR A FELONY CONVICTION AND PAYMENT OF A FINE OF UP TO $5,000.00.

APPLICABLE IN MINNESOTA – A PERSON WHO SUBMITS AN APPLICATION OR FILES A CLAIM WITH INTENT TO DEFRAUD OR HELPS COMMIT A FRAUD AGAINST AN INSURER IS GUILTY OF A CRIME.

APPLICABLE IN NEW JERSEY – ANY PERSON WHO INCLUDES ANY FALSE OR MISLEADING INFORMATION ON AN APPLICATION FOR AN INSURANCE POLICY IS SUBJECT TO CRIMINAL AND CIVIL PENALTIES.

APPLICABLE IN NEW YORK – ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR COMMERCIAL INSURANCE OR A STATEMENT OF CLAIM FOR ANY COMMERCIAL OR PERSONAL INSURANCE BENEFITS CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, AND ANY PERSON WHO IN CONNECTION WITH SUCH APPLICATION OR CLAIM, KNOWINGLY MAKES OR KNOWINGLY ASSISTS, ABETS, SOLICITS OR CONSPIRES WITH ANOTHER TO MAKE A FALSE REPORT OF THE THEFT, DESTRUCTION, DAMAGE OR CONVERSION OF ANY MOTOR VEHICLE TO A LAW ENFORCEMENT AGENCY, THE DEPARTMENT OF MOTOR VEHICLES OR AN INSURANCE COMPANY, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME, AND SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE VALUE OF THE SUBJECT MOTOR VEHICLE OR STATED CLAIM FOR EACH VIOLATION.

APPLICABLE IN OHIO – ANY PERSON WHO, WITH INTENT TO DEFRAUD OR KNOWING THAT HE/SHE IS FACILITATING A FRAUD AGAINST AN INSURER, SUBMITS AN APPLICATION OR FILES A CLAIM CONTAINING A FALSE OR DECEPTIVE STATEMENT IS GUILTY OF INSURANCE FRAUD.

APPLICABLE IN OKLAHOMA – WARNING: ANY PERSON WHO KNOWINGLY, AND WITH INTENT TO INJURE, DEFRAUD OR DECEIVE ANY INSURER, MAKES ANY CLAIM FOR THE PROCEEDS OF AN INSURANCE POLICY CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY.

APPLICABLE IN OREGON – ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD OR SOLICIT ANOTHER TO DEFRAUD THE INSURER BY SUBMITTING AN APPLICATION CONTAINING A FALSE STATEMENT AS TO ANY MATERIAL FACT, MAY BE VIOLATING STATE LAW.

APPLICABLE IN PENNSYLVANIA – ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE OR DEFRAUD ANY INSURER FILES AN APPLICATION OR CLAIM CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION SHALL, UPON CONVICTION, BE SUBJECT TO IMPRISONMENT FOR UP TO SEVEN YEARS AND THE PAYMENT OF A FINE OF UP TO $15,000.

APPLICABLE IN VERMONT – ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR ANOTHER PERSON FILES AN APPLICATION FOR INSURANCE CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, MAY BE COMMITTING A CRIME, SUBJECTING THE PERSON TO CRIMINAL AND CIVIL PENALTIES.

APPLICABLE IN VIRGINIA, WASHINGTON – IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES OR A DENIAL OF INSURANCE BENEFITS.

IN TESTIMONY WHEREOF, the Indemnitors have entered into this Agreement as of the 1st. day of July , 2013 .

## Corporation Indemnitors

Norris Brothers Excavating, LLC
1007 Rodgers Rd.
Crossville, TN 38572
_____
(Full Name and Address of Corporate Indemnitor)

By _____
Its  Justin L. Norris, Managing Member (Title)

Norris Brothers Excavating, LLC
1007 Rodgers Rd.
Crossville, TN  38572
_____
(Full Name and Address of Corporate Indemnitor)

By _____
Its  Jacob W. Norris, Managing Member (Title)

_____
(Full Name and Address of Corporate Indemnitor)

By _____
Its          (Title)

_____
(Full Name and Address of Corporate Indemnitor)

By _____
Its          (Title)

_____
(Full Name and Address of Corporate Indemnitor)

By _____
Its          (Title)

_____
(Full Name and Address of Corporate Indemnitor)

By _____
Its          (Title)

**IMPORTANT: ALL SIGNATURES MUST BE ACKNOWLEDGED ON THE ATTACHED FORM(S).**

## Individual Indemnitors

_____
_____
(Full Name and Address of Individual Indemnitor)

By _____

_____
_____
(Full Name and Address of Individual Indemnitor)

By _____

_____
_____
(Full Name and Address of Individual Indemnitor)

By _____

_____
_____
(Full Name and Address of Individual Indemnitor)

By _____

_____
_____
(Full Name and Address of Individual Indemnitor)

By _____

_____
_____
(Full Name and Address of Individual Indemnitor)

By _____

_____
_____
(Full Name and Address of Individual Indemnitor)

By _____

_____
_____
(Full Name and Address of Individual Indemnitor)

By _____

_____
_____
(Full Name and Address of Individual Indemnitor)

By _____

_____
_____
(Full Name and Address of Individual Indemnitor)

By _____

**IMPORTANT: ALL SIGNATURES MUST BE ACKNOWLEDGED ON THE ATTACHED FORM(S).**

Case 2:18-cv-00081    Document 20-6    Filed 11/19/18    Page 13 of 35 PageID #: 319

## Partnership Indemnitors

_____          _____
_____          _____
(Full Name and Address of Partnership Indemnitor)    (Full Name and Address of Partnership Indemnitor)

By _____          By _____

By _____          By _____


_____          _____
_____          _____
(Full Name and Address of Partnership Indemnitor)    (Full Name and Address of Partnership Indemnitor)

By _____          By _____

By _____          By _____


## Trust Indemnitors

_____          _____
_____          _____
(Full Name and Address of Trust Indemnitor)    (Full Name and Address of Trust Indemnitor)

By _____          By _____
    ,Trustee                            ,Trustee

By _____          By _____
    ,Trustee                            ,Trustee


_____          _____
_____          _____
(Full Name and Address of Trust Indemnitor)    (Full Name and Address of Trust Indemnitor)

By _____          By _____
    ,Trustee                            ,Trustee

By _____          By _____
    ,Trustee                            ,Trustee

### IMPORTANT: ALL SIGNATURES MUST BE ACKNOWLEDGED ON THE ATTACHED FORM(S).

Case 2:18-cv-00081   Document 20-6   Filed 11/19/18   Page 14 of 35 PageID #: 320

The following acknowledgments are intended to acknowledge the Indemnitors' signature(s) appearing on the attached Agreement of Indemnity, Westfield Insurance Co./Westfield National Insurance Co./Ohio Farmers Insurance Co, Form BD 5079 dated the **1st** _____ day of **July** , **2013** .

CORPORATION ACKNOWLEDGMENT

State of **Tennessee** _____
County of **Cumberland** _____ ss:

On the **1st** day of **July** , **2013** , before me personally came **Justin L. Norris** to me known, who, being by me duly sworn, did depose and say that he/she resides at **77 Lantana Firetower Rd., Crossville, TN 38572** that he/she is the **Managing Member** of the **Norris Brothers Excavating, LLC**, the corporation which executed the attached Agreement of Indemnity; that he/she knows the seal of the said corporation; that the seal affixed to the said Agreement of Indemnity is such corporate seal; that it was so affixed by order of the Board of Directors of the said corporation; and that he/she signed his/her name to the said Agreement of Indemnity by like order.

_Priscilla Lee Slagle_
Notary Public
My Commission expires: _March 4, 2015_

State of **Tennessee** _____
County of **Cumberland** _____ ss:

On the **1st** day of **July** , **2013** , before me personally came **Jacob W. Norris** to me known, who, being by me duly sworn, did depose and say that he/she resides at **121 Lantana FireTower Rd., Crossville, TN 38572** that he/she is the **Managing Member** of the **Norris Brothers Excavating, LLC**, the corporation which executed the attached Agreement of Indemnity; that he/she knows the seal of the said corporation; that the seal affixed to the said Agreement of Indemnity is such corporate seal; that it was so affixed by order of the Board of Directors of the said corporation; and that he/she signed his/her name to the said Agreement of Indemnity by like order.

_Priscilla Lee Slagle_
Notary Public
My Commission expires: _March 4, 2015_

CORPORATION ACKNOWLEDGMENT

State of _____
County of _____ ss:

On the _____ day of _____ , _____ , before me personally came _____ to me known, who, being by me duly sworn, did depose and say that he/she resides at _____ that he/she is the _____ of the _____, the corporation which executed the attached Agreement of Indemnity; that he/she knows the seal of the said corporation; that the seal affixed to the said Agreement of Indemnity is such corporate seal; that it was so affixed by order of the Board of Directors of the said corporation, and that he/she signed his/her name to the said Agreement of Indemnity by like order.

_____
Notary Public
My Commission expires: _____

CORPORATION ACKNOWLEDGMENT

Attach certified copy of Resolution authorizing execution of this Instrument by Corporation(s).

BD 5079 B OFWWN (03/01)

Case 2:18-cv-00081    Document 20-6    Filed 11/19/18    Page 15 of 35 PageID #: 321

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| WESTFIELD INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | |
| NORRIS BROTHERS EXCAVATING, LLC, | ) | |
| JACOB W. NORRIS, and JUSTIN L. NORRIS, | ) | |
| Defendants. | ) | |

## COMPLAINT FOR INDEMNITY AND EQUITABLE RELIEF

Plaintiff Westfield Insurance Company ("Westfield"), by and through the undersigned counsel, alleges the following for its Complaint for Indemnity and Equitable Relief against Defendant, Norris Brothers Excavating, LLC (the "Principal"), Jacob W. Norris, and Justin L. Norris (Jacob and Justin, collectively the "Principal's Members") (the Principal's Members collectively with the Principal, the "Defendants").

## I. PARTIES

1. Westfield is an Ohio corporation with its principal place of business in the State of Ohio, and Westfield is registered and/or authorized to transact business in the State of Tennessee. Westfield's principal place of business is located at Westfield's corporate headquarters in Westfield Center, Ohio, which is the location from which Westfield's high level officers direct, control, and coordinate Westfield's activities. Thus, Westfield is a citizen of the State of Ohio for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

2. Upon information and belief, the Principal is a Tennessee limited liability company with its principal place of business in the State of Tennessee located at 1007 Rodgers Rd.,

1348049.1

Case 2:18-cv-00081   Document 1   Filed 09/13/18   Page 1 of 19 PageID #: 1
Case 2:18-cv-00081   Document 20-6   Filed 11/19/18   Page 17 of 35 PageID #: 323

Crossville, Tennessee 38572. The Principal's Members, Jacob W. Norris and Justin L. Norris, are citizens of the State of Tennessee. Accordingly, the Principal is a citizen of the State of Tennessee for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a). Upon information and belief, the Principal may be served with process via its Managing Members, Jacob W. Norris and/or Justin L. Norris at 1007 Rodgers Rd., Crossville, Tennessee 38572.

3.     Jacob W. Norris is a citizen of the State of Tennessee and may be served with process at his residence at 413 Rebecca Dr., Crossville, Tennessee 38555.

4.     Justin L. Norris is a citizen of the State of Tennessee and may be served with process at his residence at 77 Lantana Firetower Road, Crossville, Tennessee 38572.

## II.     <u>JURISDICTION AND VENUE</u>

5.     This Honorable Court possesses original jurisdiction over this Complaint pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs, and the matter is controversy is between citizens of different states.

6.     This Honorable Court possesses the power to declare the respective rights and other legal relations of Westfield and the Defendants as requested herein pursuant to 28 U.S.C. § 2201(a).

7.     Venue is proper in the United States District Court for the Eastern District of Tennessee, Northeastern Division, pursuant to 28 U.S.C. § 123 and 28 U.S.C. § 1391(a), because each of the Defendants resides in the Eastern District, Northeastern Division (Cumberland County).

## III. FACTUAL ALLEGATIONS

### The Indemnity Agreement

8.      As a condition of Westfield's issuance of surety bonds on behalf of the Principal,

the Principal, by and through Jacob W. Norris and Justin L. Norris, executed an Agreement of

Indemnity in favor of Westfield (the "Indemnity Agreement"), a copy of which is attached hereto

as **Exhibit 1**.

9.      With respect to the Principal's obligation to exonerate/indemnify and collateralize

Westfield in relation to its potential liability under any surety bond Westfield issued on behalf of

the Principal, Paragraph SECOND of the Indemnity Agreement states:

> The Indemnitors shall exonerate and indemnify the Surety from and against any and all liability for losses and/or expenses of whatsoever kind (including, but not limited to, interest, court costs, and counsel fees) and against any and all such losses and/or expenses which the Surety may sustain: (1) by reason of having executed or procured the execution of the Bonds; (2) by reason of the failure of the Indemnitors to perform or comply with the covenants and conditions of this Agreement; or (3) in enforcing any of the covenants and conditions of this Agreement. Whenever liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor, the Surety may demand, and the Indemnitors shall deposit with the Surety, cash or other collateral to secure the obligations of this Agreement, in kind and amount satisfactory to the Surety in its sole discretion. In the event of any payment by the Surety, the Indemnitors further agree that, in any accounting between the Surety and the Indemnitors, the Surety shall be entitled to charge for any disbursements made by it regarding the matters herein contemplated under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety. The Surety shall have every right and remedy which a personal surety without compensation would having, including the right to secure its discharge on any Bond.

10.      With respect to the trust fund nature of monies due to and to become due under

contracts covered by the Bonds, Paragraph FOURTH states:

> It is expressly understood and declared that all monies due and to become due under any contract or contracts covered by the Bonds are deemed to be trust funds,

whether in the possession of the Indemnitors or otherwise for the benefit of and for payment of all obligations incurred in the performance of the contract and for labor, materials, and services furnished in connection with any such contract or contracts for which the Surety would be liable under any Bond, which trust also inures to the benefit of the Surety for any liability or loss it may have or sustain under any Bond, and this Agreement and declaration shall also constitute notice of such trust.

11. With respect to Westfield's rights of access to the Principal's books and records,

Paragraph ELEVENTH states:

At any time, and until such time as the liability of the Surety under any and all the Bonds is terminated, the Surety shall have the right to reasonable access to the books, records, and accounts of the Indemnitors; and any bank depository, materialman, supply house, or other person, firm, or corporation when requested by the surety, under contracts being performed by the Contractor, the condition of the performance of such contracts and payments of accounts. If requested by the Surety, the Contractor shall promptly confirm the Surety's rights to any entity or other person referenced above.

12. With respect to Westfield's right to adjust, settle, or compromise any claim against

the Bond, Paragraph FIFTEENTH of the Indemnity Agreement states:

The Surety shall have the right to adjust, settle or compromise any claim, demand, suit, or judgment related in any way to the Bond or contracts referenced in the Bond; whether arising on behalf of itself or in the name of any Contractor or other Indemnitor hereunder, and any such adjustment, settlement or compromise entered into by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety from the Indemnitors hereunder by reason of such adjustment, settlement or compromise.

13. As a clarification that the Indemnity Agreement should be broadly construed in

Westfield's favor, Paragraph SIXTEENTH states, "The Indemnitors agree that their liability shall

be construed as broadly as the liability of the Surety, regardless of whether such liability is incurred

as a result of claims presented in contract, tort, equity, or otherwise."

## Westfield's Bonds and Losses/Exposures Thereunder

14. In reliance upon the Principal's execution of the Indemnity Agreement in

Westfield's favor and in reliance upon Westfield's rights under the Indemnity Agreement,

1348049.1

Case 2:18-cv-00081  Document 1  Filed 09/13/18  Page 4 of 19 PageID #: 4
Case 2:18-cv-00081    Document 20-6    Filed 11/19/18    Page 20 of 35 PageID #: 326

Westfield issued a number of surety bonds on behalf of the Principal including, but not limited to, the following:

| Bond | Penal Sum | Obligee | Project |
|---|---|---|---|
| Performance Bond 4786637 | $2,943,497.65 | Sanitation District No. 1 | Richwood Gravity Sewer |
| Payment Bond 4786637 | $2,943,497.65 | Sanitation District No. 1 | Richwood Gravity Sewer |
| Performance Bond 4786629 | $878,325.30 | Morristown Utility Commission | New Spring Creek Force Main |
| Payment Bond 4786629 | $878,325.30 | Morristown Utility Commission | New Spring Creek Force Main |
| Performance Bond 4786646 | $411,616.00 | Town of Jacksboro | Dog Creek Trunkline Rehabilitation |
| Payment Bond 4786646 | $411,616.00 | Town of Jacksboro | Dog Creek Trunkline Rehabilitation |
| Payment Bond 8167643 | $3,524,062.00 | Hardin County Water District No. 2 | River Sewer Infrastructure |
| Performance Bond 8167643 | $3,524,062.00 | Hardin County Water District No. 2 | River Sewer Infrastructure |
| Payment Bond 4381343 | $1,115,387.00 | City of Crossville | 15-01 Water System Improvement |
| Performance Bond 4381343 | $1,115,387.00 | City of Crossville | 15-01 Water System Improvement |
| Payment Bond 4786644 | $2,967,855.00 | City of Paris | Sewer System Rehab Phase 1 |
| Performance Bond 4786644 | $2,967,855.00 | City of Paris | Sewer System Rehab Phase 1 |

The surety bonds identified in the table above (collectively, the "Principal's Bonds") are collectively attached hereto as **Exhibit 2**. For ease of reference, the underlying contracts for which the Principal entered into that are covered by the Principal's Bonds will be referred to as "Bonded Contracts" and the underlying projects collectively as "Bonded Projects".

     15.    To date, Westfield has already paid the following losses, liabilities, costs, expenses, etc. arising out of and/or in connection with the Principal's Bonds:

| Claimant | Amount Paid | Bond |
|---|---|---|
| Cavco | $32,489.00 | Payment Bond 4786637 |
| Arts Rentals | $89,764.05 | Payment Bond 4786637 |
| **Total** | **$122,253.05** | |

16. In addition to the payments Westfield has already made on the Principal's Bonds, the following liability has been asserted against Westfield arising out of and/or in connection with the Principal's Bond:

| Claimant | Claim Amount | Bond |
|---|---|---|
| Hilltop Stone, LLC | $44,169.21 | Payment Bond 4786637 |
| Riegler Blacktop | $5,177.91 | Payment Bond 4786637 |
| A&A Safety Inc. | $4,750.00 | Payment Bond 4786637 |
| Spectra-Tech LLC | $11,700.00 | Payment Bond 4786637 |
| Boone | $10,847.00 | Payment Bond 4786637 |
| Southern Pipe & Supply Co. Inc. | $33,880.54 | Payment Bond 4786637 |
| Greater Cincinnati Blacktop | $80,600.00 | Payment Bond 4786637 |
| Vulcan Materials Co & Subsidiaries | $11,836.72 | Payment Bond 4786629 |
| United Rentals (North America) Inc. | $97,080.02 | Payment Bond 4786629 |
| Town of Jacksboro | Unknown | Performance Bond 4786646 |
| Sanitation District No. 1 | Unknown | Performance Bond 4786637 |
| City of Crossville | Unknown | Performance Bond 4381343 |

17. In addition, Westfield has incurred fees of attorneys and consultants arising out of or in connection with the Principal's Bonds in an amounts to be proven in this action, which currently exceed $10,345.50, and Westfield continues to incur fees of attorneys and consultants arising out of or in connection with the Principal's Bonds.

18. Westfield also continues to face exposure to the obligees under the Principal's Bonds and/or and, based upon the information it has received, Westfield expects to receive additional claims from the Principal's subcontractors/suppliers under the Principal's Bonds.

**Principal's Failure to Comply with the Indemnity Agreement**

19. Despite Westfield's prior demands, the Principal has failed to indemnify, exonerate, and collateralize Westfield as required by the Indemnity Agreement.

20.     For example, by letter dated July 16, 2018, a copy of which is attached hereto as **Exhibit 3** and as more fully discussed therein, Westfield demanded that the Principal, among other things (a) indemnify Westfield for all losses paid by Westfield, claims against the Principal's Bonds, and expenses incurred by Westfield; (b) deposit funds and/or other collateral security that Westfield deems adequate equaling $700,000.00 relative to Westfield's estimated exposure; and (c) allow Westfield access to the Principal's books and records. However, the Principal did not indemnify Westfield, did not deposit collateral with Westfield in response to Westfield's demand, and did not allow Westfield access to the Principal's books and records.

21.     By letter dated September 10, 2018, a copy of which is attached hereto as **Exhibit 4** and as more fully discussed therein, Westfield, among other things, (a) outlined a number of defaults on the part of the Principal under the Indemnity Agreement including the Principal's failure to indemnify, collateralize, and allow Westfield reasonable access to its books and records; (b) advised the Principal that it was currently in breach of the Indemnity Agreement; (c) advised the Principal that Westfield would continue utilizing counsel to take action through litigation by Westfield to enforce its rights under the Indemnity Agreement and under law; and (d) advised the Principal of Westfield's expectations that the Principal continue to faithfully prosecute the Bonded Contracts during the pendency of any dispute or litigation with Westfield. To date, the Principal has failed to deposit any collateral and/or indemnify/exonerate any of Westfield's fees and expenses.

### Jacob Norris and Justin Norris's Actions

22.     By virtue of Paragraph FOURTH of the Indemnity Agreement, all monies due or to become due under the Bonded Contracts were impressed with a trust under Tennessee law (express, constructive, and/or resulting) in favor of and for the benefit of Westfield and the

1348049.1

Principal's subcontractors/suppliers on the Bonded Projects for the sole and special purpose of paying the Principal's obligations under the Bonded Contracts and for labor, materials, and serviced furnished in connection with the Bonded Contracts.

23. Moreover, by virtue of the Indemnity Agreement, the Principal held all monies due or to become due under the Bonded Contracts, to the Principal under the Bonded Contracts in trust under Tennessee law (express, constructive, and/or resulting) in favor of and for the benefit of Westfield for the special and exclusive purpose of paying the Principal's subcontractors/suppliers on the Bonded Projects from those proceeds (which would in turn satisfy the condition of the Principal's Bonds).

24. By virtue of their execution of the Indemnity Agreement on behalf of the Principal, the Principal's Members had actual notice of the trust that was imposed upon the proceeds of the Bonded Contracts and the special and exclusive purpose of the proceeds of the Bonded Contracts.

25. Upon information and belief, the Principal's Members accepted, directed the Principal to improperly use, or otherwise used proceeds of the Bonded Projects for purposes other than the Principal's payments to subcontractors/suppliers for work they performed on the Bonded Projects and/or to satisfy the conditions of the Principal's Bonds with actual knowledge that the Principal held those funds for the special and exclusive purpose of paying the Principal's subcontractors/suppliers out of those proceeds for the work they performed on the Bonded Projects.

## IV.    CLAIMS FOR RELIEF

### COUNT I – Breach of the Indemnity Agreement

26. Westfield hereby restates the allegations contained in the foregoing paragraphs of this Complaint for Indemnity and Equitable Relief as if fully set forth herein.

1348049.1
Case 2:18-cv-00081   Document 1   Filed 09/13/18   Page 8 of 19 PageID #: 8
Case 2:18-cv-00081     Document 20-6     Filed 11/19/18     Page 24 of 35 PageID #: 330

27.     Under Paragraph SECOND of the Indemnity Agreement, as more fully set forth therein, the Principal is obligated to exonerate and indemnify Westfield from and against any and all liability for losses and/or expenses of whatsoever kind (including, but not limited to, interest, court costs, and counsel fees) and from and against any and all such losses and/or expenses which Westfield may sustain (a) by reason of having executed the Bond, (b) by reason of the failure of the Indemnitors to perform or comply with the covenants and conditions of the Indemnity Agreement, or (c) in enforcing any of the covenants and conditions of the Indemnity Agreement.

28.     To date, Westfield has incurred losses and expenses in excess of $132,000 as a result of (a) having executed the Principal's Bonds, (b) the Principal's failure to perform and comply with the covenants and conditions of the Indemnity Agreement, and/or (c) having to enforce the covenants and conditions of the Indemnity Agreement.

29.     Westfield continues to face exposure to further liability for losses and expenses by reason of (a) having executed the Principal's Bonds, (b) the Principal's failure to perform and comply with the covenants and conditions of the Indemnity Agreement, and/or (c) having to enforce the covenants and conditions of the Indemnity Agreement.

30.     The Principal has materially breached Paragraph SECOND of the Indemnity Agreement by failing and/or refusing to exonerate and indemnify Westfield from and against any and all liability for losses and/or expenses of whatsoever kind (including, but not limited to, interest court costs, and counsel fees) and from and against any and all such losses and/or expenses Westfield may sustain (a) by reason of having executed the Principal's Bonds, (b) by reason of the failure of the Indemnitors to perform or comply with the covenants and conditions of the Indemnity Agreement, or (c) in enforcing any of the covenants and conditions of the Indemnity Agreement.

1348049.1
Case 2:18-cv-00081   Document 1   Filed 09/13/18   Page 9 of 19 PageID #: 9
Case 2:18-cv-00081      Document 20-6      Filed 11/19/18      Page 25 of 35 PageID #: 331

31.     Westfield has been damaged by the Indemnitors' material breach of Paragraph SECOND of the Indemnity Agreement in an amount in excess of $132,000.

32.     Therefore, Westfield is entitled to the entry of judgment against the Principal in an amount sufficient to fully exonerate and indemnify Westfield from and against any and all liability for losses and/or expenses of whatsoever kind (including, but not limited to, interest, court costs, and counsel fees) and from and against any and all such losses and/or expenses which Westfield may sustain (a) by reason of having executed the Principal's Bonds, (b) by reason of the failure of the Principal to perform or comply with the covenants and conditions of the Indemnity Agreement, or (c) in enforcing any of the covenants and conditions of the Indemnity Agreement, which amount currently exceeds $132,000 and will be proven at trial.

**COUNT II – Specific Performance of the Indemnity Agreement (Deposit of Collateral)**

33.     Westfield hereby restates the allegations contained in the foregoing paragraphs of this Complaint for Indemnity and Equitable Relief as if fully set forth herein.

34.     Under Paragraph SECOND of the Indemnity Agreement, whenever liability exists or is asserted against Westfield, whether or not Westfield has made any payment therefore, Westfield may demand, and the Principal shall deposit with Westfield, cash or other collateral to secure the Principal's obligations under the Indemnity Agreement, in kind and amount satisfactory to Westfield in its sole discretion.

35.     As reflected by **Exhibit 3**, Westfield has demanded that the Principal deposit $700,000 with Westfield as collateral security for their exoneration, indemnification, and other obligations to Westfield relative to the Principal's Bonds.

36.     Despite Westfield's demand, the Principal has not deposited **any** collateral with Westfield, which constitutes a material breach of Paragraph SECOND of the Indemnity Agreement.

37.     The Principal's breach of Paragraph SECOND of the Indemnity Agreement has immediately and irreparably damaged Westfield.

38.     Westfield does not possess an adequate remedy at law in relation to the Principal's breach of Paragraph SECOND of the Indemnity Agreement.

39.     Westfield is therefore entitled to the entry of an injunction/judgment compelling the Principal to deposit collateral with Westfield in the amount of $700,000 as collateral security for their exoneration, indemnification, and other obligations to Westfield relative to the Principal's Bonds (though Westfield expressly reserves the right to demand additional collateral in the future).

### COUNT III – Specific Performance (*i.e.*, Access to Books and Records)

40.     Westfield hereby restates the allegations contained in the foregoing paragraph of this Complaint for Indemnity and Equitable Relief as if fully set forth herein.

41.     Under Paragraph ELEVENTH of the Indemnity Agreement, until the Principal's liability to Westfield under the Indemnity Agreement is terminated, Westfield may demand the reasonable access to the books, records, and accounts of the Principal, and the Principal has a continuing obligation to allow Westfield reasonable access to its books, records, and accounts.

42.     Without reasonable and immediate access to all of the Principal's books, records, and other documents, Westfield is deprived of its ability to investigate/exercise the various rights assigned to Westfield under Paragraph ELEVENTH of the Indemnity Agreement, is deprived of its ability to investigate/exercise the most effective means of minimizing its potential losses under

the Principal's Bonds, and is deprived of its ability to investigate/exercise its various rights against the Indemnitors.

43.    Despite Westfield's demands, the Principal has failed to provide reasonable access to the Principal's books, records, and accounts which constitutes a material breach of Paragraph ELEVENTH of the Indemnity Agreement.

44.    The Principal's breach of Paragraph ELEVENTH of the Indemnity Agreement has immediately and irreparably harmed Westfield.

45.    Westfield does not possess an adequate remedy at law in relation to the Principal's breach of Paragraph ELEVENTH of the Indemnity Agreement.

46.    Westfield is therefore entitled to, among other things, the entry of a preliminary injunction and/or judgment compelling specific performance of the Principal's duty to provide Westfield reasonable access to the Principal's books, records, and accounts.

**COUNT IV – Equitable Indemnity, Reimbursement
and Exoneration Against the Principal**

47.    Westfield hereby restates the allegations contained in the foregoing paragraphs of this Complaint for Indemnity and Equitable Relief as if fully set forth herein.

48.    Pursuant to common law right of exoneration, indemnification, and reimbursement, Westfield is entitled to exoneration, indemnification, and/or reimbursement from the Principal, as the principal on the Principal's Bonds, for all loss suffered by Westfield, as surety, by reason of having issued the Principal's Bonds on behalf of the Principal.

49.    Therefore, the Principal is liable to Westfield for all losses suffered and anticipated to be suffered by Westfield by reason of having issued the Principal's Bonds on behalf of the Principal, which amount currently exceeds $132,000 and will be proven at trial.

1348049.1

Case 2:18-cv-00081   Document 1   Filed 09/13/18   Page 12 of 19 PageID #: 12
Case 2:18-cv-00081      Document 20-6      Filed 11/19/18      Page 28 of 35 PageID #: 334

## COUNT V – *Quia Timet*

50.　Westfield hereby restates the allegations contained in the foregoing paragraphs of this Complaint for Indemnity and Equitable Relief as if fully set forth herein.

51.　Pursuant to its equitable remedy of *quia timet*, Westfield is entitled to be provided money and/or property by the Principal sufficient to exonerate Westfield, as surety, from and against any loss that has resulted to Westfield by reason of having executed the Principal's Bods, which amount currently exceeds $132,000 and will be proven at trial.

## COUNT VI – Conversion of Trust Funds by Defendants Jacob Norris and Justin Norris

52.　Westfield hereby restates the allegations contained in the foregoing paragraphs of this Complaint for Indemnity and Equitable Relief as if fully set forth herein.

53.　Under Paragraph FOURTH of the Indemnity Agreement, the Principal agreed, among other things, that all monies due and to become due under any of the Bonded Contracts would be deemed trust funds for the benefit of and for payment of all obligation incurred in the performance of the Bonded Contracts and for labor, material, and services furnished in connection with the Bonded Contracts, and for the benefit of Westfield for any liability or loss Westfield may have or sustain under the Principal's Bonds.

54.　As detailed herein, all proceeds of the Bonded Contracts the Principal received from the Obligees were impressed with a trust under Tennessee law (express, constructive and/or resulting) for the benefit of the Principal's subcontractors/suppliers on the Bonded Projects and/or Westfield.

55.　By virtue of their execution of the Indemnity Agreement on behalf of the Principal, the Principal's Members possessed actual knowledge that all proceeds of the Bonded Contracts the Principal received from the obligees of Bonded Projects were impressed with a trust under

Tennessee law (express, constructive, and/or resulting) for the benefit of the Principal's subcontractors/suppliers on the Bonded Projects and/or Westfield.

56.     Furthermore, the Principal's Members possessed actual knowledge that all payments from the obligees to the Principal under the Bonded Projects were made for the special purpose of the Principal's payment to its subcontractors/suppliers from those proceeds for the work they performed on the Bonded Projects.

57.     The Principal's Members also had actual knowledge that all payments from the obligees to the Principal under the Bonded Contracts were made for the special purpose of the Principal's payment to its subcontractors/suppliers from those proceeds for the work they performed on the Bonded Contracts.

58.     Despite the Principal's Members actual knowledge of the trust fund nature and/or special purpose of the proceeds of the Bonded Contracts, the Members, upon information and belief, accepted, directed the Principal to improperly use, or otherwise used certain proceeds of the Bonded Contracts for purposes other than the Principal's payment to subcontractors/suppliers for work they performed on the Bonded Projects and/or to satisfy the conditions of the Principal's Bonds.

59.     To the extent they accepted or directed the Principal to improperly use, and/or other use of certain proceeds of the Bonded Contracts, the Principal's Members exercised dominion over and/or appropriated the proceeds of the Bonded Contracts in defiance of the rights of the Principal's subcontractors/suppliers and Westfield to those proceeds.

60.     By virtue of its performance under the Principal's Bonds, Westfield has become and continues to become equitably subrogated to any rights the Principal's subcontractors/suppliers on the Bonded Projects may possess against the Principal and others,

including the Principal's Members, relative to amounts owed to those subcontractors/suppliers for work they performed on the Bonded Projects, including the legal/equitable interests those subcontractors/suppliers possess in relation to the proceeds of the Bonded Contracts.

61.     Therefore, Westfield possesses a conversion claim against the Principal's Members, independently and by virtue of equitable subrogation, relative to the Principal's Members wrongful/unlawful exercise of dominion and/or appropriation of the proceeds of the Bonded Contracts.

62.     Accordingly, Westfield is entitled to a judgment against the Principal's Members in an amount equal to any proceeds of the Bonded Contracts the Principal's Members may have accepted, directed the Principal to improperly use, and/or otherwise used for purposes other than the Principal's payment to subcontractors/suppliers for work they performed on the Bonded Projects and/or to satisfy the conditions of the Principal's Bonds.

### COUNT VII – Aiding and Abetting Breach of Fiduciary Duty by Defendants Jacob Norris and Justin Norris

63.     Westfield hereby restates the allegations contained in the foregoing paragraphs of this Complaint for Indemnity and Equitable Relief as if fully set forth herein.

64.     As detailed herein, all proceeds of the Bonded Contracts the Principal received from the obligees of the Bonded Projects were impressed with a trust under Tennessee law (express, constructive and/or resulting) for the benefit of the Principal's subcontractors/suppliers on the Bonded Projects and/or Westfield.

65.     By virtue of their execution of the Indemnity Agreement on behalf of the Principal, the Principal's Members possessed actual knowledge that all proceeds of the Bonded Contracts the Principal received from the obligees of Bonded Projects were impressed with a trust under

1348049.1
Case 2:18-cv-00081   Document 1   Filed 09/13/18   Page 15 of 19 PageID #: 15
Case 2:18-cv-00081      Document 20-6      Filed 11/19/18      Page 31 of 35 PageID #: 337

Tennessee law (express, constructive, and/or resulting) for the benefit of the Principal's subcontractors/suppliers on the Bonded Projects and/or Westfield.

66.    By virtue of the trust nature of the proceeds of the Bonded Contracts, the Principal's use of the proceeds of the Bonded Contracts for any purpose other than the Principal's payment to subcontractors/suppliers for work they performed on the Bonded Projects and/or to satisfy the conditions of the Principal's Bonds would constitute a breach of the fiduciary duty the Principal owed to Westfield.

67.    Despite their actual knowledge that such conduct would constitute a breach of fiduciary duty the Principal owed to Westfield, the Principal's Members, upon information belief, accepted, directed the Principal to improperly use, or otherwise used certain proceeds of the Bonded Contacts for purposes other than the Principal's payment to subcontractors/suppliers for work they performed on the Bonded Projects and/or the satisfaction of the conditions of the Principal's Bonds.

68.    Despite their actual knowledge that such conduct would constitute a breach of fiduciary duty the Principal owed to Westfield, the Principal's Members, upon information belief, also encouraged, substantially assisted, and/or participated in the Principal's use of certain proceeds of the Bonded Contacts for purposes other than the Principal's payment to subcontractors/suppliers for work they performed on the Bonded Projects and/or the satisfaction of the conditions of the Principal's Bonds.

69.    Therefore, to the extent the Principal's Members encouraged, substantially assisted, and/or participated in the Principal's use of certain proceeds of the Bonded Contacts for purposes other than the Principal's payment to subcontractors/suppliers for work they performed on the Bonded Projects and/or the satisfaction of the conditions of the Principal's Bonds, Westfield

possesses a claim against the Principal's Members for aiding and abetting the Principal's breach

of the fiduciary duty it owed to Westfield in an amount that currently exceeds $132,000 and will

be proven at trial.

**COUNT VIII – Money Had and Received**
**by Defendants Jacob Norris and Justin Norris**

70.      Westfield hereby restates the allegations contained in the foregoing paragraphs of

this Complaint for Indemnity and Equitable Relief as if fully set forth herein.

71.      As detailed herein, the Principal's Members, upon information and belief, have

received proceeds of the Bonded Contracts under circumstances that in equity and good conscience

the Principal's Members ought not retain them and in justice and fairness they belong to Westfield,

the equitable titleholder of the proceeds of the Bonded Contracts.

72.      Therefore, to the extent the Principal's Members have received proceeds of the

Bonded Contracts under circumstances that in equity and good conscience the Principal's

Members ought not retain them and in justice and fairness they belong to Westfield, Westfield

possesses a claim against the Principal's Members for money had and received and is entitled to

judgment in the amount of the proceeds of the Bonded Contracts the Principal's Members

inequitably received.

WHEREFORE, PREMISES CONSIDERED, Westfield prays for the following relief:

a)      For the issuance of process requiring each of the Defendants to answer Westfield's
        Complaint for Indemnity and Equitable Relief;

b)      For the entry of judgment against the Principal in an amount sufficient to fully
        exonerate and indemnify Westfield from and against any and all liability for losses
        and/or expenses of whatsoever kind (including, but not limited to, interest, court
        costs, and counsel fees) and from and against any and all such losses and/or
        expenses which Westfield may sustain (a) by reason of having executed the
        Principal's Bond, (b) by reason of the failure of the Principal to perform or comply
        with the covenants and conditions of the Indemnity Agreement, or (c) in enforcing

1348049.1

any of the covenants and conditions of the Indemnity Agreement, which amount currently exceeds $132,000 and will be proven at trial,

c)    For the entry of preliminary injunction and/or judgment compelling the Principal to deposit collateral with Westfield totaling $700,000 as security for their exoneration, indemnification, and other obligations to Westfield relative to the Principal's Bond (though Westfield expressly reserves the right to demand additional collateral in the future);

d)    For the entry of a preliminary injunction and/or judgment compelling specific performance of the Principal's duty to provide Westfield reasonable access to the Principal's books, records, and accounts;

e)    For a judgment against the Principal for all losses suffered and anticipated to be suffered by Westfield by reason of having issued the Principal's Bonds on behalf of the Principal, which amount currently exceeds $132,000 and will be proven at trial;

f)    For the entry of judgment against the Principal for money and/or property sufficient to exonerate Westfield, as surety, from and against any loss that has resulted to Westfield by reason of having executed the Principal's Bonds, which amount currently exceeds $132,000 and will be proven at trial;

g)    For the entry of a judgment against the Principal's Members in an amount equal to the proceeds of any Bonded Contracts the Principal's Members converted to use for purposes other than the Principal's payment to subcontractors/suppliers for work they performed on the Bonded Projects and/or to satisfy the conditions of the Principal's Bonds, which amount will be proven at trial;

h)    For the entry of a judgment against the Principal's Members for aiding and abetting breach of fiduciary duty in an amount equal to the proceeds of any Bonded Contracts in relation to which the Principal's Members encouraged, substantially assisted, and/or participated in the Principal's use of proceeds of the Bonded Contacts for purposes other than the Principal's payment to subcontractors/suppliers for work they performed on the Bonded Projects and/or the satisfaction of the conditions of the Principal's Bonds, which amount will be proven at trial;

i)    For the entry of a judgment against the Principal's Members for money had and received to the extent the Principal's Members have received proceeds of the Bonded Contracts under circumstances that in equity and good conscience the Principal's Members ought not retain them and in justice and fairness they belong to Westfield, which amount will be proven at trial; and

j)    For such further relief, both general and specific, as may be appropriate in accordance with the nature of this cause including, but not limited to, pre-judgment and post-judgment interest.

Respectfully submitted,

*/s/ Jarrod W. Stone*

Jarrod W. Stone      TN Bar No. 023915
J. Caralisa Connell      BPR No. 36298
MANIER & HEROD
1201 Demonbreun Street, Suite 900
Nashville, Tennessee 37203
Phone: (615) 244-0030
Fax: (615) 242-4203
JStone@ManierHerod.com
CConnell@ManierHerod.com

*Attorneys for Westfield Insurance Company*

1348049.1
Case 2:18-cv-00081   Document 1   Filed 09/13/18   Page 19 of 19 PageID #: 19
Case 2:18-cv-00081      Document 20-6      Filed 11/19/18      Page 35 of 35 PageID #: 341